# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30704

United States Court of Appeals
Fifth Circuit

**FILED**
September 22, 2020

Lyle W. Cayce
Clerk

TEAM CONTRACTORS, L.L.C.,

> Plaintiff - Appellee

v.

WAYPOINT NOLA, L.L.C.,

> Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before CLEMENT, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A general contractor sued the construction project's architects and engineers for negligence and the project owner for breach of contract. At the end of the first trial, the general contractor prevailed against the engineers and architects but not against the owner. Due to a finding that the initial verdict had an irreconcilable conflict, a second trial was held just on the breach of contract claim. The jury reached a verdict for the general contractor, and the owner appealed. Two members of our panel find there was no irreconcilable conflict in the verdict; a different pair of judges joins this opinion's analysis that the general contractor's failure to object before the discharge of the jury waived any possible conflict. We VACATE the district

No. 19-30704

court's judgment and REMAND for the district court to reinstate the original verdict and to consider attorneys' fees.

FACTUAL AND PROCEDURAL BACKGROUND

This contract dispute arises out of the construction of the Hyatt House, which is a New Orleans hotel. In September 2014, Waypoint NOLA, L.L.C., the owner of the project, entered into a construction contract with its general contractor, Team Contractors, L.L.C. Waypoint entered into an architectural contract with Hogan Campis Architects ("HCA"), and HCA retained KLG, L.L.C., as the project's engineer. During construction, the parties learned that KLG's plumbing and mechanical systems did not comply with code requirements. Because of this, the construction drawings were revised through change orders. These changes created more work for Team, increased its costs, and delayed completion of the entire project.

In February 2016, Team filed suit against Waypoint, HCA, and KLG for costs and damages Team incurred as a result of the changes and delays. Team brought claims of negligence and breach of contract against Waypoint and claims of negligence against HCA and KLG. On July 10, 2017, Waypoint paid Team $1,023,514.09. Team did not bring a negligence claim against Waypoint at trial.

There were two jury trials. The first spanned two weeks from February 26 to March 9, 2018. After deliberations, jurors answered "no" to question 6 on their verdict form: "Has it been shown by a preponderance of the evidence that Waypoint breached the contract?" Because of that negative answer, jurors followed their instruction not to answer question 7: "Did the breach of the contract by Waypoint cause damage to Team?"

Question 8 of the verdict form asked for the amount of damages that should be awarded to Team, divided into damages categories, but it did not

2

provide for jurors to specify which defendant was responsible for any category. The jury completed that part of the form by awarding $565,979.99 in damages to Team.   Question 9 of the form required assigning "percentages of responsibility for the damages entered in Question 8."  HCA was assigned 30 percent, KLG 60 percent, Waypoint and Waypoint's project manager Steve Laski, 5 percent each, and none to Team.  In response to Question 10, the jury found there should be no damages awarded to Team for unapproved change orders or contractual interest.  After Question 10, the verdict form stated: "If the total amount you entered is zero, and you assigned more than zero percent responsibility to Waypoint in Question 9, proceed to Question 11."  The jury responded to Question 11, indicating that Waypoint was not entitled to contractual defenses, reducing Team's recovery from Waypoint.

When the jury presented its verdict with answers to written questions on March 9, the district judge asked the jury to retire to the jury room.  In the jury's absence, the judge asked counsel: "Does everybody agree that we don't need to ask the jury anything?"  Nothing was suggested by counsel.  The jury was called back, then dismissed with the judge's thanks.  The judge then asked counsel if there were any other matters that required her attention.  There were none, and the court adjourned.

On March 19, 2018, the district court entered judgment in favor of Team against defendants HCA and KLG for $509,381.99 on Team's negligence claims, equal to 90 percent of the damages awarded in Question 8 of the verdict form.  Judgment was entered in favor of Waypoint, and against Team, on Team's breach of contract claim against Waypoint.

On April 2, 2018, almost a month after the dismissal of the jury, Team moved to amend the judgment as to the breach of contract claim, the only portion of the judgment in favor of Waypoint.  The district court converted Team's motion into a motion for new trial, then granted the motion based on

No. 19-30704

irreconcilability of the verdict. The district court vacated the judgment for Waypoint on Team's breach of contract claim. The second trial on that claim lasted from April 15 to 17, 2019. That jury found in favor of Team on its claim against Waypoint and awarded $59,746.43 plus interest. Waypoint appealed.

## DISCUSSION

Waypoint raises several arguments challenging the results of the second trial, but its attention is initially on the point that the district court erred in even granting a new trial. That predicate question will be the focus of our analysis. The answer potentially turns on whether the first jury entered a special verdict or a general verdict with written questions.

Another issue, equally relevant but not a predicate for our approach, is whether answers were actually inconsistent. We earlier identified the source of the ostensible inconsistency. To summarize, the only claim against Waypoint was for breach of contract. Jurors checked "no" in responding to whether Waypoint had committed a breach. A few sections later on the verdict form, jurors were to assign "percentages of responsibility for the damages." They assigned 10 percent total to Waypoint and one of its employees. There is an inconsistency, but a district court first, then also the appellate court, must reconcile answers on a verdict form when there is a basis to do so. The concurring opinion suggests the reconciliation is that jurors found Waypoint not *liable* financially but found it shared *responsibility* in actual causation by the 10 percent allocation.

A test that established limits to a court's effort to reconcile juror answers was expressed in the authority cited in the concurring opinion. It required the explanation to be logical and probable:

> This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the

4

answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict.

*Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).

Further, we are to consider if "there is a view *of the case* that makes the jury's answers to special interrogatories consistent"; if so, "they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) (emphasis added). Thus, it is not some hypothetical case we examine but the actual case that is on appeal. Further, we should "look beyond the face of the [answers to] interrogatories to the court's instructions as well." *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040 (5th Cir. 1982). These rules indicate that reconciliation is not unbounded. It is controlled by what was before jurors that could justify the answers they gave.

What follows analyzes a different issue: regardless of whether there were inconsistencies, was the new trial properly granted? Our analysis is in three parts. (I) What form of verdict did the first jury enter after the first trial? (II) If some inconsistency in the verdict existed, what procedure needed to be followed to address that? Our resolution of those issues requires us to address one more. (III) What should be done about attorneys' fees?

I.    *Special verdicts and general verdicts with answers to written questions*

There are two options when a federal court asks jurors to express fact findings on the case. One is for special verdicts:

(1) *In General.* The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

5

No. 19-30704

> (A) submitting written questions susceptible of a categorical or other brief answer;
>
> (B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or
>
> (C) using any other method that the court considers appropriate.

FED. R. CIV. P. 49(a)(1). The court then takes those answers, applies the relevant law, and decides what the proper result is for the parties.

The other option is for "General Verdict[s] with Answers to Written Questions." FED. R. CIV. P. 49(b)(1).[1] Its distinction from special verdicts is that jurors must go beyond mere fact finding. We will discuss that later.

The verdict category determines how inconsistencies among the answers must be raised. Rule 49(a) does not identify options when the written findings for special verdicts are inconsistent, but caselaw does. The requirement relevant here is that even if an irreconcilable conflict is not recognized by court or counsel until after the jury has been discharged, the district court "has no authority to enter judgment based upon those answers," and a new trial must be held. *Moss v. Princip*, 913 F.3d 508, 521 (5th Cir. 2019) (quoting *Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 297–98 (5th Cir. 1986)).

Rule 49(b) on general verdicts with written questions identifies three scenarios about consistency. FED. R. CIV. P. 49(b)(2)–(4). Important on this appeal is not which one of those three might be involved. Instead, we are concerned with the timing of a claim of inconsistency under Rule 49(b). We have held that "objections to alleged inconsistencies between a general verdict and answers to verdict questions are waived if a party fails to object when the

---

[1] Rule 49(b) had referred to a "written interrogatory," a phrase used in some of the cases we discuss. 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 49.02[1] (3d ed. 2019). In 2007, that phrase was replaced with "written question," a change that was "stylistic only." FED. R. CIV. P. 49 advisory committee's note to 2007 amendment.

jury announces the verdict, while the jury is still empaneled." *Montano v. Orange Cnty.*, 842 F.3d 865, 881–82 (5th Cir. 2016). Raising the objection before jurors are discharged allows jurors to deliberate further. Once the jury is discharged, any actual inconsistencies cannot be corrected, but there is a general verdict indicating who won that allows the district court to enter a judgment.

Our summary reveals the importance of classifying the first jury's verdict. With special verdicts, there is no fallback general verdict expressed on the jury form. There can be no waiver by late raising of the issue of inconsistency because the jury has not resolved what is necessary for the court to enter judgment. On the other hand, if there is a general verdict with written questions, arguments about inconsistency are waived by not raising them until after the jurors are discharged. This court recently expressly made the distinction: "While waiver would not apply had the jury given a special verdict, the verdict in this instance was general," and thus waiver applies. *Id.* at 882.

To understand the difference between the two forms of Rule 49 verdicts, we start with a dictionary definition of a general verdict: "[a] verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions." BLACK'S LAW DICTIONARY 1592 (8th ed. 2004). We gave a similar explanation a little more than forty years ago when we described how a general verdict is reached: "After receiving the court's instructions, the jury weighs the facts in light of the court's instructions and renders a verdict for the plaintiff or the defendant." *Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 405 (5th Cir. 1979). Among many specific examples is this one: "Based upon the general verdict that 'We, the jury, find for the defendants, each and every one, against the plaintiff,' the District Court entered a judgment for the defendants." *Dement v. Olin-Mathieson Chem. Corp.*, 282 F.2d 76, 78 (5th Cir. 1960).

Rule 49(b) adds to the traditional form of a general verdict by requiring jurors also to answer specific questions: "The court may submit to the jury forms for a general verdict, *together* with written questions." FED. R. CIV. P. 49(b)(1) (emphasis added). The rest of this part of the Rule requires the district court to give jurors "the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, *and must direct the jury to do both.*" *Id.* (emphasis added). Clearly, then, Rule 49(b) contemplates there will be questions to answer and also a general verdict to complete. The reason for our focus on the answers to the questions being separate, at least in the contemplation of Rule 49(b), from the general verdict will become clear later.

In the recent *Montano* opinion that discussed the relevance of waiver as to each verdict form, the court concluded that it was reviewing a general verdict with answers to written questions, but it never quoted the verdict form. *Montano*, 842 F.3d at 882. We examined the *Montano* record to locate that verdict form and understand how *Montano* fits into our precedential caselaw. We find that the *Montano* verdict form did not require jurors ever to state simply who won: "We find for the plaintiff," or "We find for the defendant," with quantified damages if appropriate. The verdict form started this way:

> Do you find, from a preponderance of the evidence, that Defendant Orange County had a custom of holding incoherent pre-trial detainees suspected of being intoxicated [in a specific factual manner], and that this custom was not reasonably related to a legitimate governmental objective, that Sheriff Keith Merritt knew or should have known about the custom and was deliberately indifferent, and that this custom was the moving force leading to inadequate medical care?

Next were three questions that required separate jury answers as to how the plaintiff was affected by the defendants' unconstitutional acts: did the custom described in the first question "proximately cause[] mental anguish," "physical

8

pain," or "death?"  Several more questions were similar in format, and the final section of the form contained questions about the amount of any monetary award.

At the *Montano* charge conference, the district court stated that the verdict was "the complete opposite of the old general verdict."  Even so, the district court held that the verdict was a general one, presumably a new kind, when it denied the defendant's motions seeking to set the verdict aside for inconsistencies.  That court's guidance for classifying the verdict came from another Texas district court opinion.  *See Giddy Up, LLC v. Prism Graphics, Inc.*, No. 3:06-CV-0948-B, 2008 WL 656504, at \*3 (N.D. Tex. Mar. 12, 2008). The *Giddy Up* court, in turn, relied primarily on an Eleventh Circuit opinion. *Giddy Up*, 2008 WL 656504, at \*3 (citing *Mason v. Ford Motor Co., Inc.*, 307 F.3d 1271, 1274–75 (11th Cir. 2002)).

The question before the Eleventh Circuit in classifying that verdict was different from the one here.  In *Mason*, the court had to decide if a standard general verdict could be expressed twice by jurors, once for a negligence claim and a second time for a defective-design claim.  *Mason*, 307 F.3d at 1272 & n.1. The court held there could be two general verdicts; what controlled in deciding whether a general or a special verdict has been reached by jurors was whether stated law had to be applied to the facts or whether only fact findings were made.  *Mason*, 307 F.3d at 1275.

Among the opinions *Mason* cited was one from the Sixth Circuit, holding that with special verdicts, jurors do not apply law to their findings:

> Where special verdicts are involved, the jury's sole function is to determine the facts; therefore, neither an instruction on the law nor a summary concerning their role in relation to the law was necessary.  If the written questions submitted to the jury were truly special verdicts, no instruction on the law, and certainly not one as detailed would have been given to the jury.  The record plainly shows that the jury was instructed on the law in order to

No. 19-30704

reach a verdict.  The record also shows that written questions were submitted only for the issue of negligent misrepresentation.  Both of these actions contradict essential elements of special verdict procedure.

*Portage II v. Bryant Petrol. Corp.*, 899 F.2d 1514, 1521 (6th Cir. 1990).  The discussion of the verdict form by that court does not suggest jurors ever made a single statement of who won.  Instead, jurors answered separate questions on separate causes of action regarding whether the defendant was liable under different theories of liability based on their instructions of law.  *Id.* at 1518–19.  Then, they allocated comparative fault and establish the amount of damages.  *Id.*

*Mason* also cited a Second Circuit opinion for a similar holding:

The charge to the present jury required that it consider the necessary legal principles given to it by the trial court and make determinations of ultimate liability.  In such case, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form, and Rule 49(a) therefore does not apply.

*Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992).  There, jurors apparently were required, in addition to answering factual-legal questions, to give a traditional general verdict in the form of "whether defendant was liable to plaintiff under each of the four alternative theories and for what amount." *Id.* at 53.  The Second Circuit concluded the multiplicity of general verdicts did not prevent Rule 49(b) from applying, for the reasons we have quoted.

An explanation of special verdicts in a federal practice treatise supports that the dispositive distinction between special verdicts and general verdicts with answers to questions is whether jurors are to apply jury instructions about the law to their fact findings:

A special verdict is returned in lieu of a general verdict and contains factual findings on all of the material issues in the case.

>   Pursuant to Rule 49(a), the jury returns its special verdict in the form of written answers to separate questions concerning specific factual issues. The trial court then applies the law to those answers and enters judgment accordingly. By removing from the jury the consideration or application of the law (which a general verdict requires through application of the court's instruction), the special verdict avoids those two sources of possible error in the general verdict.

9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 49.02[2](b) (3d ed. 2019).

These authorities articulate a workable rule for identifying a general verdict with written questions. The classification depends on whether jurors must apply the explanations given to them on the law to their fact findings and thereby indicate a final result. Perhaps this approach is the result of verdict forms not completely fitting either category. A special verdict is to be stated "in the form of a special written finding on each issue of fact." FED. R. CIV. P. 49(a)(1). For general verdicts, Rule 49(b) says that the form should allow jurors both to state who won and answer questions that require applying law to the facts. If the form satisfies Rule 49(b) except for not stating that the jury finds for one party, it can still be a general verdict. Such a verdict form would not fully comply with Rule 49(b), but it would be an even worse fit for Rule 49(a).[2]

We did not explain in *Montano* why that verdict would be a general verdict, but we explicitly held it was. *Montano*, 842 F.3d at 882. We did have the argument in the appellee's brief that it was a general verdict because "the verdict form did not preserve for the trial judge the determination of who should prevail based on the jury's fact finding." Obviously, the *Montano* court also had the district court's analysis. We conclude now that in *Montano*, we accepted that the absence of the traditional "who won" general verdict

---

[2] A verdict form may not fit perfectly within either category. *See Turyna v. Martam Constr. Co.*, 83 F.3d 178, 181–82 (7th. Cir. 1996).

language is not dispositive if the questions answered by jurors are those needed for a general verdict.

We have one final piece of analysis before applying this law.   The Eleventh Circuit in *Mason* stated that a 1982 Fifth Circuit opinion was inconsistent with its reasoning.   *Mason*, 307 F.3d at 1275 & n.6 (analyzing *Mercer v. Long Mfg. N.C., Inc.*, 665 F.2d 61, 65 (5th Cir. 1982)).   The district court in *Giddy Up* also identified *Mercer* as inconsistent with its ruling.   *Giddy Up*, 2008 WL 656504, at *3 n.1.   Under this circuit's rule of orderliness, each panel deciding an appeal is bound by Fifth Circuit precedents (as district courts surely are for other reasons). *See Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018).   If *Montano* conflicted with a prior circuit precedent, the older opinion controls.  *See Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000).  Since *Mercer* predated *Montano*, it cannot be ignored.

Our review of *Mercer* reveals, though, that the issue there was not the same as we face.  As in the Eleventh Circuit's *Mason* opinion, the jury had to express its findings in the form of multiple general verdicts:

VERDICT

We, the Jury, find as follows:

AS TO BREACH OF WARRANTY:

We, the Jury, find for the Plaintiff, Bill Mercer <u>Yes</u>.

We, the Jury, find for the Defendant, Long Mfg. N.C., Inc. _____.

*Mercer*, 665 F.2d at 64 n.8.

The form also had dual options for the additional separate claims of deceptive trade practices and for strict liability — meaning there were three claims for which the jury was to find for one party or the other.  *Id.*  Jurors were told to assess damages "only if you found for Plaintiff on one of the above," and to state: "We, the Jury, assess damages for Plaintiff, Bill Mercer against Defendant, Long Mfg., N.C., Inc. in the amount of ___"; that blank on the form

12

was completed with a handwritten "$17,000." *Id.* The law to be applied as to each of those claims would have been explained in jury instructions.

In *Mercer*, we stated that the case had been submitted to the jury "in the form of a general charge [*i.e.*, the instructions] with special verdict consisting of four interrogatories under F. R. CIV. P. 49(a)." *Id.* at 64.[3] The problem for the *Mercer* court was whether there could be multiple general verdicts, one for each claim against the same defendant. The court gave two reasons for saying the form was a special verdict: "No general verdict was rendered by the jury, and the District Court entered judgment only after applying the treble damage provisions of the DTPA,[4] both factors pointing against finding a submission under F. R. CIV. P. 49(b)." *Mercer*, 665 F.2d at 65.

We conclude that *Mercer* controls only those situations in which a verdict against one party on different claims is expressed in the manner used at the trial in that case, *i.e.*, in a form similar to multiple general verdicts. That is also what *Mason* concerned, and it correctly saw *Mercer* as reaching a different result. *Mason*, 307 F.3d at 1275 & n.6. Our discussion of *Mercer* is a good point to segue into a review of the two principal authorities on which the district court relied to hold a special verdict was reached on Waypoint. One was a nonprecedential opinion quite similar to *Mercer*, in that the verdict form was divided into three separate categories of possible ways in which the defendant breached the contract. *Wayelinq, Inc. v. JDS Lightwave Prods. Grp., Inc.*, 289 F. App'x 755, 757 (5th Cir. 2008). There was no analysis of why this

---

[3] The rehearing opinion held there was no waiver of an inconsistency for failure to object before the jury was discharged when the inconsistency was with answers to questions on a special verdict form under Rule 49(a). *Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 947–48 (5th Cir. 1982).

[4] The acronym is for the Texas Deceptive Trade Practices-Consumer Protection Act, a statute that provides for treble damages in circumstances that were found to exist in *Mercer*. *Id.* at 64 & n.9 (citing 1973 Tex. Gen. Laws, ch. 143, § 1, at 322).

was a special verdict, just a simple declaration that it was. *Id.* at 761. The district court here immediately after citing *Wayelinq* referred to *Mercer* in a footnote and seemed to suggest it was a similar case: "The Fifth Circuit has even found a verdict that required the jury to make separate findings as to liability for breach of warranty, deceptive trade practices, and strict liability to be a special verdict form. *Mercer*, 665 F.2d at 64 n.8."

The other opinion on which the district court relied never asked jurors a separate question on liability. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 307 (5th Cir. 1993). A representative question was this: "Did the negligence, if any, of those named below proximately cause the injury in question? Answer 'Yes' or 'No' for each of the following." *Id.* The verdict form then had a blank for jurors to write "yes" or "no" as to Anheuser-Busch, Inc. and then for Harold McDaniel. *Id.* Another question asked for fault to be allocated to the two parties we just named and also to a railroad. *Id.* It is difficult to categorize that verdict form, but it is not helpful in categorizing the one in this case.

Therefore, neither opinion relied on by the district court to hold that a special verdict was entered in the present case directly supports that conclusion. We examine in detail the verdict form that was used in the first trial, then apply what we have concluded about the applicable law.

The relevant part of the form was the breach of contract claim because it was the one claim against Waypoint that was retried:

**SECTION II - TEAM'S BREACH OF CONTRACT CLAIM AGAINST WAYPOINT**

6. Has it been shown by a preponderance of the evidence that Waypoint breached the contract?

    ___ YES ___ NO

    *If NO proceed to Question 8; if YES proceed to Question 7.*

7. Did the breach of the contract by Waypoint cause damage to Team?

14

No. 19-30704

___ YES ___ NO

***Proceed to Question 8.***

Jurors answered "NO" to Question 6, then skipped Question 7.

This part of the verdict form required jurors to state an answer by combining their fact finding with the judge's instructions on interpreting Waypoint's obligations under the contract. Upon receiving this verdict, the district judge did not need to apply the law regarding contract breaches; jurors already had. Further, breach of contract was the only claim against Waypoint. The jury left nothing for the district judge to do as to this defendant other than resolving any arguments as to defects in the verdict, and finding none, to enter judgment. Jurors had resolved the case against Waypoint, not simply made fact findings.

Unlike in *Mercer*, then, in the present case there were not multiple verdicts to resolve one defendant's liability under different claims. Conversely, unlike in the present case, *Mercer* did not involve different verdicts for different defendants. Therefore, that opinion does not control on how those different jury decisions are expressed. Multiple questions about liability are necessary on a general verdict form when there are multiple defendants.

There is still more to the current case's verdict form that we need to discuss. Though the negative answer to Question 6, asking whether Waypoint breached the contract, fully resolved the case against Waypoint, that answer would not have sufficed had the jury decided there was a breach. The jury then would have needed to answer Question 7 and state whether the breach caused damage to Team. The jury here properly left that answer blank, but affirmative answers to both Questions 6 and 7 would have made relevant two questions we mentioned earlier. Question 8 asked for the amount of damages that should be awarded to Team. The jury answered with $565,979.99. The alleged inconsistency in the verdict arises from what the jury did next. It

15

completed Question 9 of the form by assigning "percentages of responsibility for the damages entered in Question 8." Among other allocations, the jury assigned 5 percent of the fault to Waypoint and the same to Waypoint's project manager, Steve Laski. We need to analyze if those findings affect whether this was a general verdict as to Waypoint.

The first point is that when the instructions and verdict form were being finalized, the district court anticipated that jurors might find Waypoint had not breached the contract but still assign some percentage to that defendant when allocating fault to others. At that time, the court concluded that such allocation would not create liability for Waypoint.

> We've been discussing the jury verdict form and the jury instructions, and we have just had an agreement by the parties that the plaintiff is bringing only [a] breach of contract claim against Waypoint. If the jury finds that there is negligence, but no breach of contract, and they assign a percentage of fault to Waypoint, Waypoint will not be liable for that percentage of recovery, but that percentage will reduce the amount that the other parties are responsible for.

Later, in a post-trial hearing in which the jury's answers were put on trial, the district court discussed this earlier evaluation of how to handle this very situation. Nonetheless, in the subsequent order granting a partial new trial, the court held that allocating Waypoint fault was inconsistent with the jury's finding That Waypoint had not breached the contract.

In an alternate world in which Waypoint was found to have breached the contract and damaged Team, the questions after numbers 6 and 7 might be relevant in categorizing the Waypoint verdict. The jury's actual answers, though, meant that Waypoint had no liability because, as the district court explained when the verdict form was being finalized, allocations of fault later on the form would have no effect on Waypoint. We hold that after the verdict was announced, the allocations of fault remained irrelevant.

16

We hold that if the answers to written questions require jurors to apply the instructed law to their fact-findings, thereby fully explaining who prevails on all claims against a single defendant, and if relevant, the amount of any monetary award, that is sufficient for a Rule 49(b) verdict. We conclude that also is the meaning of our *Montano* precedent. Though in this case the jurors were not given, as Rule 49(b) states, "forms for a general verdict" and also for answers to written questions, jurors applied their instructions on the law to their fact finding and found there had been no breach of contract. That result fully resolved the claim against Waypoint. The general verdict is incomplete in Rule 49(b) terms, but it is sufficient.

## II.    *Waiver*

Any "objections to alleged inconsistencies between a general verdict and answers to verdict questions are waived if a party fails to object when the jury announces the verdict, while the jury is still empaneled." *Montano*, 842 F.3d at 881–82. "While waiver would not apply had the jury given a special verdict, the verdict in this instance was general." *Id.* at 882. This rule is consistent with "[m]ost of the federal courts that have addressed the issue. . . . [A] party's failure to object to an inconsistency between the response to a special interrogatory and the general verdict waives the right to further deliberation by the jury or to the grant of a new trial motion." 9B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FED. PRAC. & PROC. § 2513 (3d ed. 2020).

Despite an opportunity to do so, Team did not object to the first verdict on an inconsistency ground while the jury was still empaneled, so Team waived any such objection.

We must proceed further, though, because this is not an appeal from proceedings that followed a district court's grant of a late motion filed under Rule 49(b). Instead, Team filed a Rule 59(e) motion to amend the judgment so

that Waypoint would be assessed 10 percent of the liability in light of jurors' allocation of that percentage of fault to the company and one of its employees. The district court *sua sponte* converted the motion to one for a new trial under Rule 49(a) for special verdicts, decided that this verdict was a special one, and granted a new trial as to Team's claim against Waypoint because of inconsistencies in the answers.

Though Team had waived the issue of inconsistency and could not have succeeded on appeal in having us set the original verdict and judgment aside, this procedural history causes us to contemplate the possibility that a district court could have authority to grant a new trial after the jury has been discharged because of the court's perception that answers to questions and a general verdict were inconsistent.[5]

We need go no further than recognizing a possible distinction because the district court's order reveals the court was using the caselaw we have discussed. It determined that the jury rendered a special verdict under Rule 49(a), and therefore there was no issue of possible inconsistencies in the verdict having been waived. The district court went further, though, and concluded that even if this were a general verdict under Rule 49(b), "Team's right to object has not been waived." The court compared two Fifth Circuit opinions involving general verdicts with answers to written questions. One held that a district court may not enter a judgment on a general verdict for which there were inconsistent answers to questions, but there was no issue raised of a late

---

[5] There is little to guide us for whether a district court has authority to grant a new trial due to inconsistency in a Rule 49(b) verdict after the parties have lost the right to use that rule. Another circuit dealt with the issue. Only the writing judge concluded that the setting aside of the verdict by the district court needed to be reversed because of the party's waiver. *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1423 (10th Cir. 1986). The two concurring judges did not rely on waiver but found the answers in the verdict were reconcilable. *Id.* at 1426, 1431 (McKay, J., concurring), 1431 (Tacha, J., concurring).

objection and thus no analysis of that point. *Blackwell v. Cities Serv. Oil Co.*, 532 F.2d 1006, 1008 (5th Cir. 1976). The other said that absent a timely objection to a general verdict with inconsistent answers, the argument was waived. *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534–35 (5th Cir. 1974). The district court, perhaps understandably finding this court's precedents to present some difficulties, then made its own conclusion about what the law should be in light of the absence of waiver language in Rule 49(b) itself. With respect, there is nothing in *Blackwell* or *Stancill* to alter what we have already held. Waiver of inconsistencies in answers applies to general verdicts. This was a general verdict.

It is evident the district court was seeking to fit its decision within the existing Fifth Circuit rules on granting a party's motion for a new trial due to inconsistencies in answers on a verdict form, an effort that included analyzing whether the inconsistency had been waived. We conclude that Team waived any argument to have the verdict set aside.

III. *Attorneys' fees for substantially prevailing party*

Article 15.3.2 of the contract stated: "In the event of any litigation arising under this Agreement, should one party substantially prevail with respect to the matters being litigated, the non-prevailing party shall pay the prevailing party's costs and expenses of such litigation, including attorneys' and experts' fees."

After the first trial, at which Team prevailed on its negligence claims against HCA and KLG but not on its breach of contract claim against Waypoint, Waypoint filed a motion to determine attorneys' fees and costs. Though the issue was briefed by the parties, the district court did not issue an opinion as to attorneys' fees. Instead, in its order granting a new trial, it denied Waypoint's motion as moot. Before the second trial, though, Waypoint filed a

motion for partial summary judgment on attorneys' fees. The district court denied the motion, concluding that it could not determine whether Team had "substantially prevailed with respect to the matters being litigated" because the new jury had not yet heard evidence or reached a verdict on whether Waypoint breached the contract.

After the second trial, the district court ordered further briefing on the issue of attorneys' fees. The court determined that Team was the "substantially prevailing party" under the contract because the jury (1) found that Waypoint breached and (2) awarded damages to Team. Thus, the only district court ruling on who was the "substantially prevailing party," and the parties' arguments on appeal, are premised on the conducting of a second trial.

The district court never addressed which party is the "substantially prevailing party" under the contract in light of the results of the first trial. We decline to address this issue for the first time on appeal and remand to the district court to make a decision as to these fees.

* * *

The judgment of the district court is VACATED and the cause is REMANDED with instructions for the district court to reinstate the judgment resulting from the verdict reached by the jury in the first trial. The district court should also consider attorneys' fees.

Judge HIGGINSON joins this opinion.

No. 19-30704

EDITH BROWN CLEMENT, Circuit Judge, concurring:

The district court found that the jury's verdict was irreconcilably inconsistent. That finding was wrong. The verdict was reconcilable, and the court should have entered judgment accordingly. Instead, it ordered a new trial. That nullified a valid verdict in contravention of the Seventh Amendment. I therefore concur in the judgment, but would vacate and remand because the verdict was reconcilable.

"The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973) (citing *Atl. & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 364 (1962)). This is so whether the verdict is special or general. *See Arnold v. Panhandle & Santa Fe Ry. Co.*, 353 U.S. 360, 361 (1957) (reversing lower court because the alleged conflict between the general verdict and the special findings was reconcilable). We therefore need not decide what type of verdict we have here. The outcome is the same either way.

The district court believed that the jury's verdict was irreconcilably inconsistent because the jury found that Waypoint didn't breach the contract yet was 10% responsible for Team's damages. There's no inherent inconsistency in these findings. For the verdict to be irreconcilable, the inconsistency must be inescapable. It isn't.

On the verdict form, the jury found that Waypoint didn't breach the contract and then—as instructed based on that finding—left blank the question about whether the alleged breach caused damages to Team. Two questions later, the jury was instructed to "[a]ssign percentages of responsibility for the damages entered in Question 8." The jury answered that Waypoint was 10% responsible for Team's damages. That answer creates the alleged inconsistency. The district court didn't explain why this created an

21

irreconcilable conflict. Presumably, it thought that the jury found Waypoint not in breach of the contract yet liable for damages. But that conflates responsibility with liability.

The instructions said to assign responsibility, not liability, and said nothing about what the jury should consider when assigning responsibility. The jury could have thought that Waypoint's actions partly caused Team to incur expenses, but found Waypoint not liable because these actions weren't a breach of contract. We therefore can't assume that a *responsibility* finding entails a *liability* finding.

We likewise can't assume that the jury based this finding on negligence by Waypoint. That Waypoint caused some of Team's damages doesn't mean that Waypoint caused them by breaching a duty owed to Team. The district court might have thought that the verdict was inconsistent because there was no evidence of negligence, but a defendant need not be negligent to cause damages. Indeed, he need not have done anything wrong at all. Damages happen. They aren't always caused by wrongful conduct.

One plausible view of this verdict is that the jury thought that Waypoint caused Team to suffer damages but did so without breaching the contract or any other duty owed to Team. Under that view, Waypoint was causally responsible for some of Team's damages yet not liable for them. Because that view renders the verdict consistent, we must adopt it. To do otherwise would "result[] in a collision with the Seventh Amendment." *Atl. & Gulf Stevedores*, 369 U.S. at 364 (citing *Arnold*, 353 U.S. at 360–61). The district court did otherwise. I would vacate and remand on that ground.

Judge HIGGINSON joins this opinion.