The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2026

**2026 COA 49**

**No. 25CA0886, *Nunn v. Nestor* — Civil Procedure — Special Verdict — General Verdict Accompanied by Answer to Interrogatories**

In this civil case, which involves claims against a police officer for unreasonable seizure and excessive use of force, a division of the court of appeals considers whether the jury returned a special verdict under C.R.C.P. 49(a) or a general verdict with special interrogatories under C.R.C.P. 49(b).  The answer matters because whether the defendant preserved his contention that the verdict is irreconcilably inconsistent depends on the type of verdict that the jury returned.  Expanding on the analysis in *Morales v. Golston,* 141 P.3d 901 (Colo. App. 2005), the division concludes that the jury's verdict was a general verdict with special interrogatories and, therefore, the defendant's challenge is unpreserved.

The division further concludes that any errors in the district court's jury instructions were harmless and that the defendant failed to demonstrate that he was prejudiced by the court's decision to strike his expert witness.  Accordingly, the division affirms the judgment.

Court of Appeals No. 25CA0886
Adams County District Court No. 23CV30700
Honorable Teri L. Vasquez, Judge

Preston Nunn,

Plaintiff-Appellee,

v.

Gabriel Nestor,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Gomez and Berger*, JJ., concur

Announced June 11, 2026

Ascend Counsel, LLC, Edward Milo Schwab, Casey Alexa Peel, Denver, Colorado, for Plaintiff-Appellee

Peter A. Schulte, City Attorney, Gregory R. Bueno, Assistant City Attorney, Melissa A. Holmes, Assistant City Attorney, Aurora, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Gabriel Nestor, appeals the judgment entered in favor of plaintiff, Preston Nunn. Nunn asserted several claims, including excessive force and unreasonable seizure, against Nestor — a police officer with the Aurora Police Department — after Nunn was injured during an arrest involving Nestor and other police officers. A jury found in Nunn's favor on the excessive force claim but found in Nestor's favor on the unreasonable seizure and other claims. Nestor contends that the judgment should be reversed because (1) the jury's verdict is irreconcilably inconsistent; (2) the district court gave erroneous instructions to the jury on Nunn's unreasonable seizure claim; and (3) the court abused its discretion by striking his nonretained rebuttal expert witness (rebuttal expert) on the last day of trial.

¶ 2     To resolve Nestor's first contention, we must determine whether the jury's verdict was a special verdict under C.R.C.P. 49(a) — as Nestor argues — or a general verdict with special interrogatories under C.R.C.P. 49(b) — as Nunn argues. The answer matters because, as discussed below, whether Nestor's challenge to the verdict is preserved depends on the type of verdict that the jury returned. Expanding on a division of this court's

1

analysis in *Morales v. Golston,* 141 P.3d 901 (Colo. App. 2005), we conclude that the jury verdict in this case was a general verdict with special interrogatories and, therefore, Nestor's contention that the verdict is inconsistent is unpreserved.

¶ 3     Regarding Nestor's second contention, we conclude that any errors in the court's unreasonable seizure instructions were harmless.  Finally, with respect to Nestor's third contention, we conclude that, because Nestor has failed to demonstrate any prejudice from the court's decision to strike his rebuttal expert, any error by the court in doing so was harmless.  And because we've rejected each of Nestor's contentions of error, we affirm the judgment.

## I.     Background

¶ 4     In May 2021, Nestor pulled over Nunn for failing to yield to an emergency vehicle.  Nunn — a young Black man — handed Nestor his registration, but when he reached for his waistband to get his driver's license out of his wallet, Nestor drew his gun, demanded Nunn put his hands on his head, and called for backup.

¶ 5     Nunn got out of his car — still being held at gunpoint — as more police officers arrived.  One of the officers, Cody Goetz, tackled

Nunn to the ground.  As Goetz and the other officers attempted to restrain Nunn, Nestor fired his Taser at Nunn twice.  Nunn was arrested and charged with several crimes, but those charges were ultimately dismissed.

¶ 6     Nunn sued Nestor,[1] asserting claims of excessive force (for both holding him at gunpoint and tasing him), unreasonable seizure, failure to intervene in Goetz's use of excessive force, and an equal protection violation based on racial discrimination.  After a four-day trial, the jury found Nestor liable for excessive force based on holding Nunn at gunpoint but rejected each of Nunn's other claims.  Nestor appeals.

## II.    Inconsistent Verdict

¶ 7     Nestor contends that the jury's verdict finding him liable for excessive force but not liable for unreasonable seizure is irreconcilably inconsistent because "if a jury finds that an officer engaged in excessive force, they necessarily must also find that the

---

[1] Nunn sued all of the officers involved, but by the time the case went to trial, only his claims against Nestor and Goetz remained. Nunn's claims against Goetz were unsuccessful at trial.

officer engaged in an unlawful seizure." Nunn asserts[2] that Nestor failed to preserve this issue because the jury returned a general verdict accompanied by answers to interrogatories under C.R.C.P. 49(b) and Nestor failed to object before the jury was dismissed. Nestor counters that the jury returned a special verdict under Rule 49(a) and therefore he could properly object through post-trial motions. We agree with Nunn.

## A. Additional Background

¶ 8 The relevant portions of the verdict form, with the jury's answers, read as follows:

> SPECIAL VERDICT FORM – DEFENDANT NESTOR
>
> . . . .
>
> SECTION I: PRESTON NUNN'S EXCESSIVE FORCE CLAIM AGAINST GABRIEL NESTOR
>
> 1. Did Defendant Gabriel Nestor deprive Plaintiff Preston Nunn of his constitutional right to be free from excessive force?

---

[2] We note that Nunn cites two unpublished opinions from this court in support of his arguments. Absent exceptions inapplicable here, this court's policy prohibits citations to our opinions that are not selected for official publication. Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/ZQW2-H29D. We admonish counsel not to repeat this violation.

Yes X No____

. . . .

(a). Did Defendant Gabriel Nestor deprive Plaintiff Preston Nunn of his constitutional right to be free from excessive force when he pointed his duty weapon at Plaintiff Nunn?

Yes X No____

(b). Did Defendant Gabriel Nestor deprive Plaintiff Preston Nunn of his constitutional right to be free from excessive force when he used his Taser on Plaintiff Nunn?

Yes____ No X

. . . .

### SECTION II: PRESTON NUNN'S UNREASONABLE SEIZURE CLAIM AGAINST GABRIEL NESTOR

1. Did Defendant Gabriel Nestor deprive Plaintiff Preston Nunn of his constitutional right to be free from unlawful seizure?

Yes____ No X

. . . .

¶ 9    Nestor didn't object or otherwise allege any inconsistencies in the verdict before the jury was discharged.  But seventeen days after the jury returned its verdict, he filed a motion for a new trial, asserting that the verdict was irreconcilably inconsistent.

¶ 10    The district court concluded that the verdict could be reconciled and denied the motion.

## B.    Standard of Review

¶ 11    We interpret the Colorado Rules of Civil Procedure de novo. *Mason v. Farm Credit of S. Colo., ACA*, 2018 CO 46, ¶ 7.  But "because C.R.C.P. 49 is identical to Fed. R. Civ. P. 49, we may look to federal authority for guidance in construing the Colorado rule."[3] *Morales*, 141 P.3d at 905.

## C.    C.R.C.P. 49 and Preservation Under *Morales v. Golston*

¶ 12    C.R.C.P. 49 covers two types of verdicts.  Under Rule 49(a), "[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact."  And under Rule 49(b), "[t]he court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon

---

[3] C.R.C.P. 49 is substantively identical to the current version of Fed. R. Civ. P. 49 and was wholly identical to the federal rule before the federal rule was amended in 2007.  *See Morales v. Golston*, 141 P.3d 901, 905 (Colo. App. 2005); Fed. R. Civ. P. 49 advisory committee's note to 2007 amendment ("The language of Rule 49 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only.").

6

one or more issues of fact, the decision of which is necessary to a verdict."

¶ 13     In *Morales*, a division of this court addressed whether, under Rule 49, the "failure to object to any inconsistencies in the verdict before the jury is discharged waives the right to raise the issue in post-trial motions or on appeal." 141 P.3d at 905. Relying on federal authorities interpreting Fed. R. Civ. P. 49, the *Morales* division held that whether a party's "failure to object constitutes a waiver . . . hinges on the characterization of the verdicts as either special verdicts or general verdicts with answers to special interrogatories." 141 P.3d at 905.

¶ 14     A party who fails to object to a Rule 49(b) general verdict coupled with written interrogatories before the jury is discharged "waives any future challenge to the inconsistency because [their] failure to object timely deprives the court of the option of sending the jury back for further deliberations." *Id.* But if the verdict is a special verdict under Rule 49(a), "the inconsistency would not be resubmitted to the jury in any event, . . . and there is no equitable

reason to require a timely objection" before the jury is released.[4]

*Id.*; *see In re Estate of Chavez*, 2022 COA 89M, ¶¶ 31-32 (applying *Morales*).

¶ 15    Thus, whether Nestor's challenge to the verdict is preserved depends on whether the jury returned a special verdict or a general verdict accompanied by answers to interrogatories.  But the *Morales* division didn't provide much guidance about how to determine which category a verdict falls under.  We endeavor to do so now.

### D.    The Different Types of Verdicts Under C.R.C.P. 49

¶ 16    The Colorado Rules of Civil Procedure contemplate three types of verdicts: general verdicts, special verdicts, and general verdicts accompanied by answers to interrogatories.  C.R.C.P. 49; *cf.*

---

[4] After *Morales* was decided, the United States Supreme Court held that federal trial courts have "the inherent power to rescind a jury discharge order and recall a jury for further deliberations after identifying an error in the jury's verdict."  *Dietz v. Bouldin*, 579 U.S. 40, 42 (2016).  And the Tenth Circuit recently relied on *Dietz* to hold that a court "may ask the jury to reconsider" a Fed. R. Civ. P. 49(a) special verdict and, therefore, "if a party does not point out the problems with the verdict to the court and request jury reconsideration, it forfeits the issue on appeal."  *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 991 (10th Cir. 2025).  To the extent that these decisions impact the *Morales* division's holdings as to C.R.C.P. 49(a) special verdicts, we don't address them because we conclude that the verdict in this case falls under C.R.C.P. 49(b).

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003) ("The Federal Rules of Civil Procedure explicitly contemplate . . . special verdicts and general verdicts with interrogatories and implicitly contemplate common law general verdicts without interrogatories." (citations omitted)).

¶ 17     A general verdict is a "verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions." Black's Law Dictionary 1877 (12th ed. 2024). These verdicts "'simply ask the jury' to say who wins, and if it's the plaintiff, to say how much [he] gets." *Debity v. Monroe Cnty. Bd. of Educ.*, 134 F.4th 389, 398 (6th Cir. 2025) (quoting *Turyna v. Martam Constr. Co.*, 83 F.3d 178, 181 (7th Cir. 1996)). Thus, "the hallmark of a general verdict is that it requires the jury to announce the 'ultimate legal result of each claim.'" *Morales*, 141 P.3d at 906 (quoting *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1142 (10th Cir. 2005), *abrogated on other grounds by*, *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 991 (10th Cir. 2025)). Put differently, a jury returns a general verdict when it leaves nothing for the judge to do other than to enter judgment. *Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 519 (5th Cir. 2020).

9

¶ 18    In contrast, a special verdict is one in which "the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict."  Black's Law Dictionary at 1878; *see* C.R.C.P. 49(a) ("The court may require a jury to return only a special verdict in the form of a special written finding *upon each issue of fact.*" (emphasis added)).  "If the court asks the jury for special verdicts, then it becomes the role of the court to decide whether there is liability, which it does by applying the law to the jury's factual findings."  *Debity*, 134 F.4th at 399; *accord Morales*, 141 P.3d at 906.

¶ 19    A court can properly include mixed questions of law and fact in a special verdict.  *See* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2506, Westlaw (3d ed. database updated Apr. 2026) ("It long has been understood that law and fact are categories that are not so neatly separated and that it frequently will be necessary and desirable for the trial judge to submit to the jury mixed questions of law and fact."); *see also Zhang*, 339 F.3d at 1031 (The Ninth Circuit has "found no precise label" for a jury's "legal conclusions as to subsidiary issues, such as affirmative defenses, or the amount of damages owed, which are neither

findings of fact nor quite 'verdicts.'").  But a verdict is plainly *not* a special verdict "when it asks the jury to declare the ultimate result of a claim."  *Debity*, 134 F.4th at 400; *accord Team Contractors*, 976 F.3d at 520; *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 55 (2d Cir. 2002); *Zhang*, 339 F.3d at 1031; *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 190 (3d Cir. 2015); *Mason v. Ford Motor Co.*, 307 F.3d 1271, 1274-75 (11th Cir. 2002).  In other words, it's only a special verdict if "[t]he judgment itself require[s] application of the law by the judge to the facts found by the jury."  *Johnson*, 412 F.3d at 1142; *see Morales*, 141 P.3d at 906.

¶ 20        Finally, a "general verdict with interrogatories combines a general verdict with factual questions that would, standing alone, be special verdicts."  *Debity*, 134 F.4th at 400.  Thus, "[i]f a court asks for a general verdict, then any factual question is an interrogatory."  *Id.*  By including interrogatories with a general verdict, a court can require jurors "to give close attention to the *more important* issues[,] and their answers serve to check the propriety of the general verdict."  *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990) (citation omitted).

¶ 21    The difference between the three types of verdicts was aptly

described by the Ninth Circuit:

> If the jury announces only its ultimate
> conclusions, it returns an ordinary general
> verdict; if it makes factual findings in addition
> to the ultimate legal conclusions, it returns a
> general verdict with interrogatories.  If it
> returns only factual findings, leaving the court
> to determine the ultimate legal result, it
> returns a special verdict.

*Zhang*, 339 F.3d at 1031.

¶ 22    To summarize, if the jury left nothing for the judge to do but

enter judgment, then it returned a general verdict.  *Team

Contractors*, 976 F.3d at 519.  But if the judgment required the

court to apply law to facts found by the jury, then the jury returned

a special verdict.  *Johnson*, 412 F.3d at 1142.

### E.    Application to This Case

¶ 23    Although the verdict form in this case was labeled a "special

verdict form," the questions the jury was required to answer

included the following:

- "Did Defendant Gabriel Nestor deprive Plaintiff Preston

    Nunn of his constitutional right to be free from excessive

    force?"

12

- "Did Defendant Gabriel Nestor deprive Plaintiff Preston Nunn of his constitutional right to be free from unlawful seizure?"

¶ 24    The verdict form didn't ask the jury simply to make factual determinations relevant to the elements of Nunn's claims; indeed, the jury wasn't asked about any element of any claim. Instead, the above questions "require[d] the jury to announce the 'ultimate legal result of each claim.'" *Morales*, 141 P.3d at 906 (citation omitted). And by answering these questions and then determining the amount of damages Nunn was entitled to, the jury left nothing for the court to do but enter judgment. *See Team Contractors*, 976 F.3d at 519. Thus, the jury returned a general verdict.

¶ 25    That the verdict form was labeled a "special verdict form" doesn't change this outcome because the label given the verdict form isn't controlling. *Debity*, 134 F.4th at 401; *see Jarvis*, 283 F.3d at 56 ("[W]here a jury is instructed to apply legal principles and assign liability, 'the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form . . . .'" (quoting *Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992))); *see also Team*

*Contractors*, 976 F.3d at 517 ("If the form satisfies Rule 49(b) except for not stating that the jury finds for one party, it can still be a general verdict. Such a verdict form would not fully comply with Rule 49(b), but it would be an even worse fit for Rule 49(a).").

¶ 26    Other questions on the verdict form, such as whether Nunn sustained damages and whether Nestor's acts caused them, asked for factual answers that couldn't, by themselves, fully resolve Nunn's claims. Thus, we conclude those questions were interrogatories related to the general verdict under Rule 49(b). *See Debity*, 134 F.4th at 402.

¶ 27    Accordingly, Nestor needed to object to any inconsistencies in the verdict before the jury was discharged to preserve his challenge for our review. *See Morales*, 141 P.3d at 905. It's undisputed that he didn't. Therefore, he waived the claimed error, and we won't further consider his contention.

### III.    Unreasonable Seizure Jury Instructions

¶ 28    The district court instructed the jury on Nunn's unreasonable seizure claim as follows:

> In Colorado, a person has the right to be free
> from an unreasonable seizure of his person.
> In order to prove the defendant[] deprived the

14

plaintiff of this right, the plaintiff must prove the following . . . elements by a preponderance of the evidence:

1.      Defendant Nestor seized Plaintiff Nunn's person;

2.      In seizing Plaintiff Nunn's person, Defendant acted intentionally; and

3.      The seizure was unreasonable.

If you find Plaintiff has proven all three of these elements, then your verdict must be for Plaintiff on his claim for unreasonable seizure.

On the other hand, if you do not find that Plaintiff has proven one or more of these elements, then your verdict must be for Defendant.

¶ 29    In a separate instruction, the court elaborated on what "seize"

means:

A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty through coercion, physical force, or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, consider all of the circumstances, including:

1.      the number of officers present;

15

2. whether weapons were displayed;

3. whether the encounter occurred in a public or nonpublic setting;

4. whether the officer's manner would imply that compliance would be compelled; and

5. whether the officers advised the plaintiff that he was free to leave.

¶ 30  Nestor contends that these instructions (together, unreasonable seizure instructions) were erroneous. We conclude that any error was harmless.

A.  Standard of Review and Preservation

¶ 31  "We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 418 (Colo. App. 2011). "As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of the instructions." *Hendricks v. Allied Waste Transp., Inc.*, 2012 COA 88, ¶ 15.

¶ 32  We review a district court's refusal to give a particular jury instruction for an abuse of discretion. *Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 9. A court abuses its discretion when its ruling is

manifestly arbitrary, unreasonable, or unfair or it misapplies the law. *Nibert v. Geico Cas. Co.*, 2017 COA 23, ¶ 8.

¶ 33    Nunn argues that this issue is unpreserved because Nestor's arguments in support of his motion for a directed verdict didn't amount to an objection to the unreasonable seizure instructions. But the record demonstrates that Nestor opposed the unreasonable seizure instructions before trial and during the instruction conference.[5]  Accordingly, we conclude that this issue is preserved.

¶ 34    We review preserved instructional errors under the harmless error standard, meaning we won't reverse the judgment absent a showing of substantial, prejudicial error. *Estate of Chavez*, ¶ 22. "Prejudicial error exists when the record shows that a jury might have reached a different verdict if a proper instruction had been given." *Schuessler v. Wolter*, 2012 COA 86, ¶ 11.

---

[5] Nunn originally proposed the language in the unreasonable seizure instructions as a single instruction.  After hearing arguments of counsel, the court modified and accepted Nunn's proposed instruction by separating it into two instructions.

## B. Any Errors in the Unreasonable Seizure Instructions Were Harmless

¶ 35 Nunn's position at trial was, in part, that he was "seized" the moment that Nestor pointed a gun at him during the traffic stop. Nestor asserted that he pointed his gun at Nunn as a show of authority and, in order for that action to constitute a seizure, Nunn was required to prove that he submitted to Nestor's show of authority.

¶ 36 Nestor thus asserts that the unreasonable seizure instructions were erroneous because they (1) didn't specify the "discrete" use of force upon which his alleged seizure of Nunn was based; (2) didn't mention that for a seizure based on a show of authority, "the suspect must have actually submitted to the show of authority"; and (3) were "exceedingly vague" and confusing.

¶ 37 Assuming without deciding that the district court's unreasonable seizure instructions were erroneous, we conclude that such errors were harmless because the jury returned a verdict in Nestor's favor on the unreasonable seizure claim. *See Ajay Sports, Inc. v. Casazza,* 1 P.3d 267, 275 (Colo. App. 2000); C.R.C.P. 61.

¶ 38    We further reject Nestor's assertion that the instructions "tainted the jury's perceptions," which "led the jury to simultaneously (and contradictorily) find Nestor liable on the excessive force claim." Although one of the elements Nunn needed to prove to prevail on his excessive force claim was that a "seizure" occurred, *see Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010), the district court's excessive force instruction didn't incorporate — explicitly or otherwise — the unreasonable seizure instructions. Instead, with respect to the excessive force claim, the court instructed the jury that Nunn needed to prove that Nestor "either (a) intentionally applied physical force against [Nunn], or (b) restricted [Nunn]'s freedom of movement through a show of authority." Nestor doesn't challenge the propriety of the excessive force instruction on appeal.

¶ 39    Moreover, Nestor fails to explain, and we fail to see, how any errors in the unreasonable seizure instructions prejudiced him. *See Schuessler*, ¶ 11. To the contrary, Nestor argues that "for a jury to find that a law enforcement officer engaged in excessive force, [it] *must* also find that the officer committed an unlawful seizure" and that the unreasonable seizure instructions were "inconsistent with

the notion that an instance of excessive force *is* an unlawful seizure." But his argument suggests that a properly instructed jury would've returned a verdict in Nunn's favor on the excessive force claim *and* the unreasonable seizure claim. In other words, Nestor would've been liable for both claims, instead of just one.[6]

¶ 40 We therefore conclude that even if the jury had been instructed as Nestor asserts it should have been, the jury would likely have reached the same verdicts — or returned an even worse outcome for Nestor — so any errors were harmless. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1200 (Colo. App. 2009).

## IV. Exclusion of Rebuttal Expert

¶ 41 Finally, Nestor contends that the district court abused its discretion by excluding his rebuttal expert on the final day of trial. We aren't persuaded.

---

[6] Indeed, the district court raised the potential for duplicative damages sua sponte and, with the parties' consent, instructed the jury that "[i]f you find for [Nunn] on more than one claim for relief, you may award him damages only once for the same injuries, damages, and losses."

## A. Additional Background

¶ 42　On the morning of the final day of trial, Nunn's counsel orally moved to strike Nestor's rebuttal expert for inadequate disclosure. Nestor's counsel responded, "That's the first I'm hearing of it," but didn't otherwise contend that Nunn's motion to strike was untimely.

¶ 43　Nunn's counsel told the district court that Nestor's disclosure document provided the rebuttal expert's opinions but didn't identify the information he considered in reaching them.[7] After the court reviewed the disclosure, it agreed that the disclosure document contained the expert's opinions but not an "explanation as to why he has those opinions or what he's relying on in forming those specific opinions."

¶ 44　After the district court confirmed with Nestor's counsel that he intended to ask the expert questions about the information he relied on in forming his opinions, the court said,

> The problem is that all you've . . . put in here
> are opinions. There is nothing in here about
> the basis for those opinions. And so if he were
> permitted to testify, all he would be permitted
> to testify to would be his experience and these
> opinions, but without a basis for the opinions,
> [Nunn's attorneys] are put in the position of

---

[7] The disclosure isn't in the appellate record.

not being able to cross-examine him on the basis for the opinions.

¶ 45    The court thus determined that the disclosure violated C.R.C.P. 26(a)(2)(B)(II) and granted Nunn's oral motion to strike Nestor's rebuttal expert.

B.    Standard of Review and Applicable Law

¶ 46    We review the district court's imposition of sanctions for discovery violations for an abuse of discretion. *Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc.*, 2017 CO 94, ¶ 8.

¶ 47    C.R.C.P. 26(a)(2)(B)(II)(a) specifies that a party who intends to introduce testimony from a nonretained expert witness must disclose "a complete description of all opinions to be expressed and the basis and reasons therefor."

¶ 48    Additionally, C.R.C.P. 37(c)(1) authorizes the district court to sanction a party who fails to comply with Rule 26's disclosure requirements. *Cath. Health Initiatives Colo.*, ¶ 11. Under Rule 37(c)(1), a party who lacks substantial justification for failing to disclose the information required by Rule 26 is prohibited from presenting the undisclosed evidence at trial unless (1) the nondisclosure hasn't caused or won't cause "significant harm" to

22

the opposing party, or (2) preclusion of the information is disproportionate to any harm caused. C.R.C.P. 37(c)(1). Rule 37 thus requires the district court to assess the harm associated with late disclosure and determine the appropriate proportional sanction. *Cath. Health Initiatives Colo.*, ¶¶ 11, 13; *see also Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 978 (Colo. 1999) (laying out factors for the court to consider in its Rule 37(c)(1) analysis).

¶ 49    In evaluating the harm caused by a party's nondisclosure, the primary inquiry is whether the untimely disclosure of the evidence will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence. *Todd*, 980 P.2d at 979. The burden is on the nondisclosing party to establish that admission of the evidence is proper despite the untimely disclosure. *See id.* at 978.

### C.    The District Court Didn't Abuse Its Discretion by Excluding Nestor's Rebuttal Expert

¶ 50    Nestor asserts that the district court reversibly erred by (1) unfairly applying its own discovery deadlines to consider Nunn's motion to strike and (2) failing to conduct a harm and

proportionality analysis before excluding his rebuttal expert. We disagree.

¶ 51 First, we reject Nestor's assertion that the district court unfairly applied discovery deadlines to him but not to Nunn. Although Nestor asserts that the district court declined to consider the discovery motions that he filed after the discovery dispute deadline, the record shows that the court did ultimately hear his untimely challenge to Nunn's nonretained expert witness at a pretrial conference held a few days before trial. The court limited the topics to which Nunn's nonretained expert witness could testify, and Nunn ultimately didn't call that witness at trial.

¶ 52 Nevertheless, Nestor also argues that the district court applied its rules unfairly because he challenged Nunn's nonretained expert before trial through his (untimely) motion to strike and in his trial brief, while he wasn't made aware of Nunn's objection to his rebuttal expert until Nunn objected on the final day of trial.[8] But Nestor didn't raise any of these concerns with the court. Thus, his

---

[8] Nestor's motion to strike also challenged Nunn's retained expert witness, but Nestor didn't reassert that issue in the district court, nor has he raised the issue in his appellate briefs.

argument is unpreserved, and we decline to address it further. *See Bertoia v. Galaxy Mgmt. Co.*, 2025 COA 55, ¶ 40 ("It is well-established Colorado law that new arguments may not be raised for the first time on appeal [in civil cases].").

¶ 53    Second, even if the district court abused its discretion by failing to explicitly conduct a harm and proportionality analysis before excluding Nestor's rebuttal expert, its failure to do so was harmless.

¶ 54    In *Todd*, our supreme court laid out a nonexhaustive list of factors for a court to consider in its Rule 37(c)(1) analysis:

> (1) the importance of the witness's testimony;
>
> (2) the explanation of the party for its failure to comply with the required disclosure;
>
> (3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony;
>
> (4) the availability of a continuance to cure such prejudice;
>
> (5) the extent to which introducing such testimony would disrupt the trial; and
>
> (6) the non-disclosing party's bad faith or willfulness.

*Todd*, 980 P.2d at 978.

¶ 55 The district court didn't address whether Nestor's late disclosure was substantially justified or whether excluding his rebuttal expert was necessary to mitigate any prejudice to Nunn's case resulting from the inadequate disclosure. But Nestor — as the nondisclosing party — bore the burden of demonstrating that his inadequate disclosure was substantially justified, that it was harmless, or that exclusion of his rebuttal expert would be disproportionate. *See id.* Yet Nestor's counsel didn't make any argument to the district court regarding these factors. Nor does Nestor make any such argument on appeal.

¶ 56 The exclusion of evidence doesn't warrant reversal unless it affects a substantial right of the party. *See* CRE 103(a); C.R.C.P. 61; C.A.R. 35(c). That means that there must be a "fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 32 (citation omitted). And it's Nestor's burden to show that the claimed error wasn't harmless. *See Curry v. Brewer*, 2025 COA 28, ¶ 54.

¶ 57 Although Nestor asserts that the impact of the exclusion of the rebuttal expert's testimony is "clear," he doesn't explain what the

26

prejudice was — i.e., how the expert's testimony would've substantially influenced the outcome of this case. And to the extent he contends that the jury necessarily credited Nunn's retained expert witness because his own expert was excluded, we won't consider this argument, other than to note that it is conclusory, because he raised it for the first time in his reply brief. *See Caylao-Do v. Logue*, 2025 COA 42, ¶ 33. Thus, even if the court abused its discretion by failing to consider the *Todd* factors, we conclude any error was harmless.

### V. Disposition

¶ 58 The judgment is affirmed.

JUDGE GOMEZ and JUDGE BERGER concur.