Peter N. WHITE, et al.,
Plaintiffs-Appellees,

v.

Zvi GRINFAS, Eva Grinfas, Asher Engler and Josephine Engler,
Defendants-Appellants.

No. 86–1263.

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1987.

Robert E. Garner, Templeton & Garner, Amarillo, Tex., for defendants-appellants.

Sharon R. Kimball, Whittenburg, Whittenburg & Schachter, Amarillo, Tex., for plaintiffs-appellees.

Before GOLDBERG, RUBIN and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants Zvi and Eva Grinfas and Asher and Josephine Engler appeal an adverse jury verdict and judgment on their counterclaims against Peter and Molly White. Appellants' counterclaims asserted that the foundation of an apartment complex, built and sold to them by the Whites, was structurally defective, and that in selling them the defective complex the Whites breached implied warranties and committed fraud. Prior to this action, the parties had entered into an extremely broad Settlement Agreement and Mutual Release (the Agreement) in another action concerning this property. At trial, the jury found that the Whites had not fraudulently induced the Agreement, because the Whites were at the time unaware of the structural defects. Thus, the Agreement barred the counterclaims, and the court entered judgment against the Appellants.

Appellants seek to reverse the judgment on four grounds. First, Appellants argue that the district court erred by refusing to submit a jury question relating to an alleged mutual mistake concerning the scope of the Agreement. Appellants also assert that certain responses to the jury questions are irreconcilable. Third, Appellants claim that the jury responses to certain interrogatories are not supported by substantial evidence. Finally, Appellants posit that a default judgment, entered pursuant to Fed. R.Civ.P. 37, dismissing the counterclaims of two defendants not party to this appeal,

Ina and Gerald Lemberg, should have estopped the Whites from defending against Appellants' counterclaims. Finding no merit to Appellants' contentions, we affirm the judgment of the district court.

### I.

In 1979, the Whites sold an apartment complex in Amarillo to the Grinfases, to the Englers, and to the Lembergs. In 1980, Appellants and the Lembergs filed suit in federal district court alleging, *inter alia,* that the Whites had committed fraud and had breached various warranties by selling the complex with construction defects. In 1981, the parties entered into the Agreement, dismissing the 1980 suit with prejudice.

In 1984, Appellants and the Lembergs defaulted on their obligations under notes securing the apartment complex. The Whites and the legal holder in due course of one of the notes, First Savings and Loan Association of Amarillo (First Savings and Loan), brought suit to recover the unpaid balance and to seek a declaratory judgment that the Appellants and the Lembergs would be liable to the Whites for any amounts that might be recovered against the Whites as a result of the default. Appellants and the Lembergs filed counterclaims, alleging that the foundation of the apartment complex contained latent construction defects, that the Whites fraudulently concealed the defects, and that such defects breached implied warranties.

On October 25, 1985, pursuant to Fed.R. Civ.P. 37(d), the district court entered a default judgment against the Lembergs and dismissed their counterclaims, because of their failure to comply with various discovery orders. On October 29, the court granted partial summary judgment, holding that the Whites and First Savings and Loan had established a right to recovery on the notes as a matter of law. The court ordered that a trial commence on Appellants' counterclaims, and realigned Appellants as plaintiffs. After a three day trial, the jury found that there were defects, but that the Whites were unaware of such defects when the Agreement was executed. Thus, because there could be no fraud, the claims were barred by the Agreement, and the court entered judgment for the Whites and First Savings and Loan.

### II.

The twenty-page Agreement settling the 1980 suit unmistakably covers the dispute at issue in this appeal:

[E]ach party to this Settlement Agreement and Mutual Release desire, through this Agreement and the Partial Performance Agreement, to compromise, settle and dismiss all disputes and differences among them, including matters raised in the Plaintiffs' Complaint, First Supplemental Complaint and Second Supplemental Complaint against the Defendants' [sic]; matters raised in the Defendants' Counterclaim against the Plaintiffs[,] matters which could have been raised in either the Plaintiffs' action against the Defendants or the Defendants' Counterclaim against the Plaintiffs, and *any other claims of any kind, and fully to release and forever discharge any claims or causes of action of whatsoever nature* which may exist among them on account of any event, occurrence, transaction or happening prior to the date of this Settlement Agreement and Mutual Release....

.  .  .  .  .

[T]he Releasors do hereby release, remise and forever discharge all persons on the foregoing list of Releasors [the Whites and these defendants] with the exception of himself or herself, of and *from any and all claims* including but not limited to, those based on statutory provisions; negligence; common-law fraud or breach of contract; demands, debts, accounts; financial obligations; rights; causes of action; suits at law or in equity; *or losses they* now have or *hereafter claim to have* against any and all other Releasors; their individual agents, servants, employees, successors and assigns, whichever is applicable by

reason or matters and things alleged in the Complaint and First and Second Supplemental Complaints filed by the Plaintiffs or the counterclaim filed by the Defendants; *by reason of any transaction, contract or business relationship between and among the Releasors;* or by reason of any other event, occurrence, transaction or happening prior to the date of this Settlement Agreement and Mutual Release....

.    .    .    .    .

It is further acknowledged and agreed by all parties that execution of this Settlement Agreement and Mutual Release is upon advice of their counsel and is *full, final and complete,* except as otherwise expressly provided herein, *regardless of whether all losses and damages from the transactions described herein are now known to exist or shall hereafter arise or be discovered.*

Pl.Ex. 11 (emphasis added).

Despite the plain language of the agreement, Appellants assert that the Agreement is without effect because, when the parties executed the document, they were unaware of the particular defects that are the basis of the complaint in this suit. Thus, Appellants contend that the Agreement should be set aside because of "mutual mistake."

This argument defies both common law and common sense. As a matter of Texas law, in the absence of fraud, settlement agreements and releases are a complete bar to any later action based on matters included therein. *See, e.g., Nationwide Mut. Ins. Co. v. Toman,* 660 S.W.2d 574, 576 (Tex.Civ.App.1983); *Tobbon v. State Farm Mut. Automobile Ins. Co.,* 616 S.W.2d 243, 245 (Tex.Civ.App. 1981). Appellants do not appeal the jury's rejection of fraud. Further, the Agreement waives "any and all claims ... or losses ... now ... or hereafter ... by reason of any transaction, contract or business relationship between and among the Releasors." Pl.Ex. 11. The Agreement thus plainly covers the "mistaken" defect that is the foundation of appellants' counterclaims. The failure of the parties to understand the scope of the release when the language is unambiguous, as it is here, does not support a finding of mutual mistake. *See, e.g., Champlin Petroleum Co. v. Pruitt,* 539 S.W.2d 356, 362 (Tex.Civ. App.1976, writ ref'd n.r.e.); *Berry v. Guyer,* 482 S.W.2d 719, 720 (Tex.Civ.App.1972, writ ref'd n.r.e.).

Appellants, however, point to the general rule in Texas that a release may be set aside if the parties were mutually mistaken as to the nature (not the extent) of the harm. *See, e.g., Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986); *Great American Indemnity Co. v. Blakey,* 107 S.W.2d 1002, 1005 (Tex.Civ.App.1937, writ dism'd w.o.j.). Here, however, the parties plainly anticipated the possibility of future, unforeseen claims that might arise from the initial transaction, and expressly waived all such claims. The agreement may not be set aside for mutual mistake simply because the parties made a poor prediction. For nearly a century, the Texas courts have recognized that the parties' lack of prescience when the release expressly waives all present, past and future claims arising out of the transaction is not an adequate predicate for claiming mutual mistake. *Quebe v. Gulf C. & S.F. Ry. Co.,* 81 S.W. 20 (Tex.1904).

Furthermore, were this agreement to be set aside based on mutual mistake—where the agreement facially contemplated the possibility of unforeseen claims—it would have the strange result of making all such agreements to waive potential, future claims unenforceable *ab initio.* We refuse to reach such a perverse result.

Appellants are highly educated real estate investors. They were represented by counsel when they entered into the Agreement. Indeed, it was their attorney who drafted the language of the Agreement. They may not have expected these defects to arise in the future, but they dealt the hand to themselves. The argument they erected is a house of cards—even were the buildings now on the verge of collapse, the

doctrine of mutual mistake would not serve to shore up the argument's defective and shaky foundation. The foundation collapses under the weight of the unambiguous Agreement, which expressly released all claims, even if then unknown. Thus, as a matter of law the doctrine of mutual mistake cannot in these circumstances set aside the Agreement, and the court properly determined not to submit the question to the jury.

### III.

■■■ Appellants next argue that the jury's answers to special interrogatories 5 and 14 are irreconcilable.[1] When the jury's answers appear to conflict, we are obliged to reconcile the answers, if possible, in order to validate the jury's verdict. *See, e.g., Federal Deposit Ins. Corp. v. Munn,* 804 F.2d 860, 867 (5th Cir.1986); *Crossland v. Canteen Corp.,* 711 F.2d 714, 725 (5th Cir.1983). Indeed, this effort is required by the Seventh Amendment. *See, e.g., Crossland,* 711 F.2d at 725. The touchstone in reconciling apparent conflict is whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir. 1973). Here, our effort to reconcile the jury's answers to affirm its verdict presents far less than a Herculean task.

■■■ The problem was caused by the jury's failure to follow the court's instructions. The jury was directed not to answer any further questions if it found in question 3 that the Whites did not know of any structural defects prior to the execution of the Agreement. Because all the questions subsequent to question 3 were predicated on an affirmative response to that question, the subsequent answers had to conflict with the answer to question 3, regardless of whether they were also in conflict with each other.

Thus, the real dispute is between the answer to question 3 and all other answers, rather than between the answers to questions 5 and 14. To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict.

Here the jury found in response to question 3 that the Whites were unaware of any structural defects at the time of the settlement agreement. *A fortiori,* lacking scienter, the Whites could not have fraudulently induced the Appellants to enter into the Agreement. Consequently, the Agreement barred assertion of the counterclaims as a matter of law, and the jury's answers to the questions following question 3 cannot be used to cast doubt upon the jury's clear verdict.

### IV.

■■■ Appellants also argue that the jury's response to question 3—that the Whites lacked knowledge of the structural defects prior to execution of the Agreement—is not supported by substantial evidence. *See, e.g., Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc). The record, however, is replete with evidence that the Whites were unaware of any structural defects in the foundation of the apartments when they entered into the Agreement.

### V.

Finally, Appellants argue that the default judgment and dismissal, rendered against the Lembergs as sanctions for failure to comply with the court's discovery orders, estops the Whites from defending against their counterclaims and is res judi-

---

1. The special interrogatories and the jury's responses (and nonresponses) are fully set out in an appendix following the opinion.

cata. We need not decide whether application of res judicata, election of remedies, or double recovery to co-defendants who were not subject to a Rule 37 default judgment has any logical or legal basis. This argument was not raised below, and we decline to consider this argument here because it is raised for the first time on appeal. *See, e.g., Capps v. Humble Oil & Refining Co.,* 536 F.2d 80, 82 (5th Cir.1976).

## CONCLUSION

■ The Whites and First Savings and Loan argue that this appeal is "frivolous," and that we should therefore sanction Appellants accordingly. They complain primarily of " 'rambling briefs [that] include citations ... which have little to do with the issues in this case,' " and of arguments by Appellants that are " 'puzzling and exasperating.' " Appellees' Brief at 25 (quoting *Olympia Co. v. Celotex Corp.,* 771 F.2d 888, 893 (5th Cir.1985)).

The naked and unpleasant truth, however, is that the quality of *both* briefs leaves something to be desired. While this case did not present the most complex of issues, neither party handled the legitimate issues that arose with the thoroughness of research, creativity and clarity of argument, and grace and agility of language that one would hope to encounter in a brief presented to a United States Court of Appeals. Additionally, although the claims may have had little merit, they are not substantially worse than numerous appeals that currently clog our dockets. This appeal, therefore, is not frivolous and sanctions are not appropriate.

For the reasons set forth above, the judgment of the district court is AFFIRMED in all respects.

## APPENDIX A

### SPECIAL ISSUE NO. 1

What amount do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiffs in this action for their reasonable and necessary attorneys' fees incurred in the preparation and trial of this case and any appeal?

Answer in dollars and cents, if any.

ANSWER:

| | |
|---|---|
| Through the trial in this court | $ 65260 |
| Through an appeal to the Court of Appeals for the Fifth Circuit | $ 82830 |

Defendants allege that the concrete foundations and slabs of the apartment complex in question were not constructed in accordance with the blueprint specifications and that the complex was built on fill dirt without adequate consideration of the makeup or drainage of the soil. Defendants further contend that these alleged failures rendered the apartment complex in question structurally defective.

Plaintiffs contend that the concrete foundations and slabs of the apartment complex were constructed in a proper manner and do not contain any structural defects.

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the apartment buildings in question were structurally defective?

Answer "We do" and "We do not"

Answer <u>We do</u>

If you answered "We do not" to Special Issue No. 2 then do *not* answer any of the following Special Issues. If you answered "We do" to Special Issue No. 2 then answer Special Issue No. 3.

### SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Plaintiffs Pete and Molly White knew that the apartment buildings in question were structurally defective at the time the parties entered into the Settlement Agreement and Mutual Release?

Answer "We do" or "We do not"

Answer <u>We do not</u>

If you have answered "We do not" to Special Issue No. 3, then do not answer any of the following Special Issues. If you have answered "We do" to Special Issue No. 3, then answer the following Special Issue No. 4.

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the structural information which Plaintiffs knew and did not disclose to Defendants was material?

You are instructed that undisclosed information is material if the information would have been important to an ordinary person in the same or similar circumstances such that had that person been aware of the undisclosed information, he would not have entered into the Settlement Agreement and Mutual Release in question.

Answer "We do" or "We do not".

ANSWER: ———

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the structural information was not disclosed by Plaintiffs with the intention of inducing Defendants into entering the Settlement Agreement and Mutual Release?

Answer "We do" or "We do not".

ANSWER: We do

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Defendants relied on the nonexistence of structural defects in the foundation and/or slabs of the apartment complex in entering the Settlement Agreement and Mutual Release?

Answer: "We do" or "We do not".

Answer We do

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Defendants had a right to rely on the nonexistence of structural defects in the foundations and/or slabs of the apartment complex in entering the Settlement Agreement and Mutual Release?

Answer "We do" or "We do not".

ANSWER: We do

You are instructed that a complaining party must, himself, not have failed to exercise reasonable care to protect himself; in other words he must not have shut his eyes and ears to matters equally open and available to him upon reasonable inquiry and investigation.

## SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that Plaintiffs Pete and Molly White knew that the apartment buildings in question were structurally defective at the time the parties entered into the purchase agreement?

Answer "We do" or "We do not."

ANSWER: We do not

If you have answered Special Issue No. 8 "We do", then answer Special Issue No. 9; otherwise, do not answer Special Issues Nos. 9, 10, 11, 12 or 13.

## SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that the structural information which Plaintiffs knew and did not disclose to Defendants was material?

You are instructed that undisclosed information is material if the information would have been important to an ordinary person in the same or similar circumstances such that had that person been aware of the undisclosed information, he would not have entered into the purchase agreement in question.

Answer "We do" or "We do not".

ANSWER: ———

## SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that the structural information was not disclosed by Plaintiffs with the intention of inducing Defendants into entering into the purchase agreement?

Answer "We do" or "We do not".

ANSWER: ———

## SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that Defendants relied on the nonexistence of structural defects in the foundations and/or slabs of the apartment com-

plex in entering into the purchase agreement?

Answer "We do" or "We do not".

ANSWER: _____

### SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence· that Defendants had a right to rely on the nonexistence of structural defects in the foundations and/or slabs of the apartment complex in entering into the purchase agreement?

Answer "We do" or "We do not".

ANSWER: _____

You are instructed that a complaining party must, himself, not have failed to exercise reasonable care to protect himself; in other words he must not have shut his eyes and ears to matters equally open and available to him upon reasonable inquiry and investigation.

### SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that Plaintiffs' failure to disclose the existence of structural defects was a proximate cause of damages, if any, to the Defendants?

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. · There may be more than one proximate cause of an event.

Answer "We do" or "We do not".

ANSWER: _____

You are instructed that under the Texas Deceptive Trade Practices Act, a consumer may maintain an action where a seller fails to disclose information concerning goods and services which was known at the time of the transaction if such failure was intended to induce the consumer into a transaction into which the consumer would not

have entered had the information been disclosed.

### SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that Plaintiffs' failure to disclose the existence of structural defects was intended to induce the Defendants into a transaction (the purchase agreement) into which the Defendants would not have entered had the information been disclosed?

Answer "We do" or "We do not".

ANSWER: <u>We do not</u>

If you have answered "We do" to Special Issue No. 14; then answer the following Special Issue No. 15; otherwise, do not answer Special Issue No. 15.

### SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that Plaintiffs' failure to disclose the existence of structural defects was a producing cause of any actual damages to the Defendants?

You are instructed that producing cause means an efficient, exciting or contributing cause, which, in a natural and continuous sequence, produces the damages or harm complained of, if any. There may be more than one producing cause.

Answer "We do" or "We do not".

ANSWER: _____

If you answered Special Issues No. 13 or 15 "We do", then answer the following Special Issues Nos. 16 and 17; otherwise, do not answer the following Special Issues Nos. 16 and 17.

### SPECIAL ISSUE NO. 16

Find from a preponderance of the evidence the reasonable cost in Potter County, Texas, of repairs, if any, to repair the damages caused by the structural defects in the foundations and/or slabs of the apartment complex in question at the time those defects appeared.

Answer in dollars and cents, if any.

ANSWER: _____

## SPECIAL ISSUE NO. 17

Find from a preponderance of the evidence the difference, if any, between the purchase price and the fair market value at the time of the purchase of the apartment complex with the structural defects in the foundations and/or slabs.

Answer in dollars and cents, if any.

ANSWER: _____

"Market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desire to sell, but is under no necessity of selling.

If you have answered Special Issue No. 15 "We do", then answer the following Special Issue No. 18; otherwise, do not answer the following Special Issue No. 18.

## SPECIAL ISSUE NO. 18

Do you find from a preponderance of the evidence that the failure to disclose the existence of structural defects was knowingly done by the Plaintiffs?

By the term "knowingly" as used in this Special Issue is meant actual awareness by Plaintiffs of the falsity or deception by the Plaintiffs, if any, but actual awareness may be inferred where the objective manifestations indicate that a person acted with actual awareness.

Answer "We do" or "We do not".

ANSWER: _____

If you answered Special Issue No. 18 "We do", then answer the following Issue No. 19; otherwise, do not answer Special Issue No. 19.

In connection with Special Issue No. 19, you are instructed that "additional damages" means an amount which you may in your discretion, award as an example to others, and as penalty or by way of punishment or as compensation for the inconvenience and expense of litigation, except attorney's fees and court costs, in addition to any amounts which have been found by you as actual damages.

## SPECIAL ISSUE NO. 19

What sum of money, if any, do you find from a preponderance of the evidence should be awarded to Defendants as additional damages?

Answer in dollars and cents, if any, or "None" as you may find.

ANSWER: _____