Environamics v. Thelco                    CV-98-068-M    12/03/98

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Environamics Corporation,
     Plaintiff

     v.                                        Civil No. 96-68-M

Thelco Corporation,
     Defendant


                           **O R D E R**


     On November 20, 1998, the jury returned a verdict in this

case.  The responses to special verdict questions established

that the jury found in favor of Environamics on its breach of

contract claim as well as on Thelco's counterclaims asserting

breach of the contractual duty of good faith and fair dealing,

and for unfair or deceptive trade practices.  The jury found for

Thelco on its counterclaim for negligent misrepresentation.

     Both Environamics and Thelco have moved for judgment on the

verdict.  Environamics argues that the jury's award of damages is

inconsistent with its answers to the special questions put to it.

Contending that the verdict form contained both general and

special verdicts in accordance with Fed. R. Civ. P. 49(b),

Environamics urges the court to ignore the general verdict and

damages award on its breach of contract claim and to enter

judgment on the special verdicts for the contract price (i.e.,

that amount representing unpaid invoices plus interest).  See

Fed. R. Civ. P 49(b) (where special verdicts are consistent with

each other but inconsistent with the general verdict, the trial

court may, among other options, enter judgment in accordance with the special verdicts notwithstanding the general verdict).

Thelco also urges the court to enter judgment on the verdict, but in the amount awarded by the jury. Thelco argues that the verdict is both clear and consistent.

The Seventh Amendment imposes the following requirement: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962). See also Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 590 (1st Cir. 1979) (quoting same). In addition, "it is well established that verdicts must be construed in light of the totality of the surrounding circumstances, including the court's instructions." Putnam Resources v. Pateman, 958 F.2d 448, 455 (1st Cir. 1992).

The jury's verdict is consistent with the court's instructions and is supported by the evidence. The jury found (Question 1) in favor of the plaintiff on its breach of contract claim and, as instructed, awarded full and fair damages as necessary to put the plaintiff in the position it would have been in had the defendant fully performed. The jury's damages award reads as follows:

> return of unsold stock to Environamics plus a
> restocking fee of 15% plus return freight plus 1.5% per
> month interest on unpaid invoices from 1st invoice due
> date until initiation of litigation plus invoice price
> for 2 sold pumps.

2

The jury plainly found that defendant breached the Distributor Agreement by failing to pay invoices in a timely manner, but also plainly construed the ambiguities in the Distributor Agreement regarding the return policy (for credit) as argued by defendant — against the plaintiff. That is, the jury necessarily determined that the contract, properly understood, did afford defendant the right to return inventory for credit, and that under the circumstances of this case plaintiff was obligated to accept returned inventory for credit. Thus, the jury concluded that the harm plaintiff suffered as a result of defendant's breach (failure to timely pay) was not the full contract price, but, as provided for in the contract itself, invoice price for the pumps actually sold, interest on the outstanding balance at 1.5% until litigation was initiated (by which point, the jury presumably decided, plaintiff should have reasonably accepted the return of inventory and thereby avoided further lost use value measured by interest), plus the contractually mandated 15% restocking charge associated with returned inventory, and return freight costs paid by defendant. The award of damages is not an equitable order to perform (by returning the goods). Rather, the jury was simply stating its finding as to what the damages suffered by plaintiff actually were, and how to calculate, or express those damages in a manner that could be easily converted into an accurate dollar figure. The jurors could have simply agreed upon a figure, after doing their own calculation, but they were not strictly required to do so, and the parties no doubt can agree on the math.

3

Perhaps a simple supplemental question to the jury might have categorically resolved Environamics' doubts about consistency, but both Environamics and Thelco expressly objected to the court's submission of any additional questions to the jury. The court sustained those objections because the jury's verdict can be read in a clear and consistent manner, and no further inquiry was necessary to do so.

The jury consistently found that Environamics did not fraudulently induce Thelco to enter into the contract, and made no fraudulent misrepresentations (or, that defendant at least failed to meet its "clear and convincing" burden of proof on those issues). See Question 2 and Question 3. Similarly, the jury found that Environamics did not engage in unfair or deceptive business practices (or, again, that defendant at least did not meet its burden of proof). See Question 7.

The jury also found that Environamics did not breach its implied covenant of good faith and fair dealing. See Question 5. A number of plausible explanations consistent with other findings support this conclusion — the jury could well have determined that Environamics did not breach the duty because it actually thought the contract did not permit returns for credit (as its witnesses testified), and, therefore, while Environamics was entirely wrong in its own construction of the ambiguous contract language relating to returns, it, nevertheless, was acting in sufficient good faith to avoid a finding of breach of the implied covenant. The jury also could have reasonably concluded, based

4

on the evidence presented at trial, that given Environamics'
refusal to acknowledge any right to return for credit at all
(which, as noted above, the jury could have plausibly determined
was not a position advanced by Environamics in bad faith) the
parties simply never got to the point at which the inventory was
tendered back to Environamics in the manner or on the form
described in the contract, and, so, Environamics never reached
the point of exercising its "prior approval" function in an
arbitrary or bad faith manner.

Although instructed not to answer Question 6 if the answer
to Question 5 was "No" (which it was), the jury nevertheless
answered it. The answer is surplusage and need not be considered
at all. See White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir.
1987). However, the answer given is still not necessarily
inconsistent with the jury's other responses or its verdict.
Question 6 asked:

> Do you find, by a preponderance of the evidence, that
> Environamics had no further duty to perform under the
> Distributor Agreement because Thelco was the first
> party to materially breach the contract?

The answer was "Yes." But plaintiff is wrong in reading that
unnecessary answer as creating a hopeless inconsistency, or as
establishing jury confusion. The jury could plausibly have
determined that Environamics was not required to continue to ship
goods, or continue to maintain the distributorship relationship,
i.e. "perform," given Thelco's failure to timely pay invoices as
required by the contract. The jury could also have taken note of
the evidence and defendant's argument — that the contract

5

required Environamics to give Thelco written notice of the breach and an opportunity to cure before terminating the agreement, as well as the evidence tending to establish that Environamics failed to do so. In addition, the jury could well have decided that while Environamics had no obligation to continue to perform its obligations, its actual damages for Thelco's breach of the payment terms still did not exceed the amount described, given the contract's allowance of inventory return for credit even in the event of breach by untimely payment, or non-payment. Environamics' suggestion that the jury decided that it was not obligated to take return of inventory for credit after Thelco breached the payment terms is not plausible and not consistent with the jury's award of damages, which obviously is dependent upon construction of the ambiguous return policy as argued by defendant.

Finally, the court rejects Environamics' assertion that the only damages award allowable on the verdict is an award of the contract price pursuant to Sections 2-607 and 2-709 of the Uniform Commercial Code ("UCC"). See RSA 382-A:2-607(1), :2-709(1) (1994). The UCC's provisions "may be varied by agreement." RSA 382-A:1-102(3) (1994). As noted above, the jury could have plausibly found that the Distributor Agreement gave Thelco the right to return inventory for credit even after breach, or termination by either party, of the agreement. Thus, under the terms of the contract, Environamics' loss was not the contract price but an amount that takes into account credit for

6

returned inventory.  The jury properly calculated damages with reference to the terms of the contract itself rather than the fall-back provisions of the UCC.

For the foregoing reasons, the defendant's Motion for Entry of Judgment in Accord with Special Jury Verdicts (document no. 73) is granted and the plaintiff's Motion for Entry of Judgment (document no. 72) is denied.  Should the parties disagree as to the mathematical calculation of the damages award expressed in dollars, on motion of either party the court will hold a hearing with a view toward determining the dollar amount owed.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 3, 1998

cc:  Michael C. Harvell, Esq.
     Laurin D. Quiat, Esq.
     Rosemary A. Macero, Esq.

7