# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-11167

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2024

Lyle W. Cayce
Clerk

Sarah Lindsley,

*Plaintiff—Appellee*,

*versus*

Omni Hotels Management Corporation,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-2942

———————————————————————

Before Clement, Engelhardt, and Wilson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Sarah Lindsley brought this discrimination lawsuit, after filing an Equal Employment Opportunity Commission (EEOC) complaint, against her longtime employer, Omni Hotels Management Corporation (Omni). In the suit, she brought several claims, including, in relevant part, sex-based pay discrimination under the Equal Pay Act, 29 U.S.C. § 206(d) (EPA), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* (Title VII). According to Lindsley, Omni discriminated against her on the basis of her sex, setting her initial salary too low so that, despite subsequent raises and pay beyond that of her male colleagues, she continuously earned

less than she otherwise would have. After motions practice, Lindsley's pay-discrimination claims under the EPA and Title VII went to trial. In the first verdict form, the jury answered special interrogatories. Those answers reflected that Omni was not liable under either the EPA or Title VII yet owed more than $25 million in Title VII damages. The district court deemed the jury's answers internally inconsistent, amended the verdict form for clarity, and ordered further deliberation. After renewed deliberation, the jury found for Lindsley on her Title VII claim only, again awarding her over $25 million in Title VII damages. The district court entered judgment accordingly, reducing Lindsley's damages under the statutory cap, and Omni appealed, challenging the judgment on several bases.

Because we hold that the district court did not err in handling the first verdict form, but did err in handling the second verdict form, we VACATE the district court's judgment and REMAND for a new trial on that basis.

## I.

## A.

Sarah Lindsley worked at Omni from February 2001 to June 2016. She started as a server at Omni Tucson National Resort and was promoted several times thereafter—first to an hourly supervisor in 2007, then to a salaried outlet manager in 2008, and then to the general manager of the resort's steakhouse in 2009. In June 2010, Omni promoted Lindsley to Assistant Director of Food and Beverage (F&B) at the Omni Corpus Christi hotel. Lindsley alleges that she was initially offered, and accepted, the Assistant Director position at a salary of $64,000. The final offer letter that Lindsley received, however, reflected a salary of only $57,000. Lindsley complained about the apparent decrease in salary to Nils Stolzlechner, the General Manager of the Omni Corpus Christi hotel, but to no avail.

No. 23-11167

David Morgan, the Director of F&B who oversaw all Omni properties, was apparently involved in the decision to offer Lindsley the $57,000 salary. Lindsley alleges that previously—when she worked at Omni's Tucson hotel, where Morgan then served as General Manager—Morgan harassed her by sitting "so close [to her] that he touched the entire side of [her] body," stroking her hair, and telling her that she had long, beautiful hair. Lindsley also avers that later, as a supervisor, she referred multiple complaints from female employees alleging sexual harassment by Morgan to HR. Morgan apparently was never punished and, in fact, eventually received a promotion to Vice President over Omni's entire F&B Department. Moreover, Stolzlechner, like Morgan, received a promotion despite previously being accused of sexual harassment. That accusation resulted in a separate lawsuit against Omni.

In April 2011, Lindsley received a 13% raise, bringing her new annual salary to $64,410. Three months later, Lindsley received yet another promotion, this time to Director of F&B at Omni Corpus Christi; that promotion came with a 10% salary increase, bringing her new salary to $70,851. That salary was lower than the starting salaries of the three people (all men) who held the position before her. In addition to the fact that Lindsley's immediate predecessor—Daniel Cornelius—allegedly lacked the qualifications for the Director role, the two predecessors before him were, respectively, terminated for "gross misconduct" and designated as ineligible for rehire due to "integrity problems."

After receiving her promotion to Director, Lindsley complained to Susan Gilbert, the Director of Human Resources, about the discrepancy between her initial pay as Director and that of her predecessors. Gilbert advised Lindsley to speak to the General Manager, Mark Piatkowski. Piatkowski told Lindsley to be "more respectful and thankful for the opportunity that he was giving [her]." Lindsley escalated her complaint to

3

No. 23-11167

the President of Human Resources at Omni, Joy Rothschild, but no investigation ensued.

## B.

On September 23, 2015, Lindsley filed a Charge of Discrimination with the EEOC. On October 27, 2015, the EEOC received the charge.[1] After the EEOC produced factual findings, Lindsley filed this suit on October 25, 2017, alleging pay-discrimination, promotional-discrimination, and retaliation claims under Title VII, the EPA, the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.* (West 2023). The district court initially granted summary judgment to Omni on all claims, *Lindsley v. TRT Holdings*, No. 17-CV-02942-

---

[1] Generally, if a plaintiff fails to file a charge within 300 days of when any alleged act of discrimination occurred, he or she "lose[s] the ability to recover for it" because it is time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). A charge is filed for purposes of Title VII when the EEOC receives the charge. *Taylor v. Gen. Tel. Co. of Sw.*, 759 F.2d 437, 441–42 (5th Cir. 1985). Under the first section of the Ledbetter amendment, 42 U.S.C. § 2000e-5(e)(3)(A),

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

As this court explained in *Niwayama v. Texas Tech Univ.*, 590 F. App'x 351 (5th Cir. 2014), the Ledbetter amendment "makes each paycheck at an allegedly discriminatory rate a separate, discrete act of discrimination, effectively resetting the statute of limitations for filing an EEOC charge." *Id.* at 356.

Here, the 300th day before the EEOC's receipt of the charge was December 31, 2014. Lindsley's annual salary as of that date was $84,052.55 per year, and no comparator ever reached an annual salary that high. However, Lindsley premised her theory of discrimination on the fact that her low starting salary caused her later salaries, even if higher than her predecessors', to be lower than they otherwise would be. Therefore, each paycheck constituted a new act of discrimination for purposes of the time-bar.

4

X, 2019 WL 6467256, at *10 (N.D. Tex. Dec. 2, 2019), *aff'd in part, rev'd in part and remanded sub nom. Lindsley v. TRT Holdings, Inc.* (*Lindsley I*), 984 F.3d 460 (5th Cir. 2021) (Clement, Ho, Duncan, JJ.), but Lindsley appealed, and this court reversed and remanded only as to the pay-discrimination claims under Title VII, the EPA, and the Texas Labor Code. *Lindsley I*, 984 F.3d at 468–69.

On remand, Omni again moved for summary judgment, and the district court granted the motion in part, dismissing Lindsley's pay-discrimination claims to the extent they were based on comparators other than her three predecessors in the Corpus Christi F&B Director role. Lindsley subsequently waived her Texas Labor Code claim. Thus, when the case proceeded to trial, only the following question went before the jury: During the relevant time period, did Lindsley's sex cause her, as the Corpus Christi F&B Director, to be paid less than her three predecessors in violation of Title VII or the EPA?

At trial, Lindsley argued that her pay in her prior position of Assistant Director was discriminatorily low and continued to affect her. Specifically, she alleged that she was supposed to receive—and in fact was verbally offered—a $64,000 to $65,000 starting salary for this position but that Morgan caused the final pay offer to be $57,000. Her initial salary, Lindsley seems to argue, caused all subsequent salaries to be lower than they otherwise would be.

Lindsley testified at trial that she was not seeking any lost wages but instead sought only compensatory damages for her mental and emotional suffering.[2] Specifically, due to the internal blowback from filing her EEOC

---

[2] For some reason, a question about lost wages made it into the subsequent verdict forms.

complaint, Lindsley suffered mental and emotional harm and was diagnosed with anxiety, PTSD, and depression.

The jury was instructed that it should proceed to determine whether Omni caused Lindsley damage under Title VII only if it were to find a Title VII violation. The jury was further instructed that Title VII damages include "emotional distress, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life." Furthermore, the jury was advised that they could award punitive damages only if Lindsley proved by a preponderance of the evidence that the individual who engaged in the discriminatory act or practice was acting in a managerial capacity in the scope of their employment and with malice or reckless indifference to Lindsley's federally protected right to be free from discrimination. Although the jury instructions explained that the jury should determine Lindsley's compensatory damages only upon a finding of liability, the initial verdict form did not provide that the jury's answer to the amount of Lindsley's compensatory damages was contingent upon its prior answer on liability. The question of Title VII liability on the verdict form read as follows:

> Has Plaintiff Lindsley proved that she would not have been compensated less than one or more of her male predecessors in the position of Director of Food & Beverage at the Omni Hotel in Corpus Christi in the absence of—in other words, but for— her sex?

Appendix A.

The jury on multiple occasions asked the court for clarification in answering the verdict form. The district court explained on the record that "this jury is struggling with the lack of micro-conditioning"—i.e., making certain answers within the verdict form contingent on others—and inserted micro-conditioning principles for the EPA-related questions (questions 5–9) but not for the questions concerning Title VII liability and damages

(questions 1–4). The micro-conditioning on the EPA questions instructed the jury to answer the damages questions only upon affirmatively answering the liability questions and negatively answering the affirmative defense question. The court then included the instruction—and Omni did not object—that "[y]our Title VII answer doesn't [affect] your Equal Pay Act answer."

The jury returned a verdict form that entered "Ø" in response to questions about the amount of lost wages and benefits Lindsley incurred (a) from September 23, 2013 to December 30, 2014, and (b) from December 31, 2014 to June 8, 2016, *see id.*—presumably because Lindsley clarified at trial that she sought none. The jury found that Omni had proved its EPA defense that any pay differential for Lindsley resulted from a factor other than sex. The jury thus held Omni not liable under the EPA and concluded that no damages should be awarded under the EPA. Importantly, the jury's verdict also answered "no" to the question regarding Title VII liability yet awarded $100,000 in compensatory damages and $25 million in punitive damages in the Title VII section. *See id.*

The district court concluded that the jury had been "confused by conditioning on equal pay and . . . the double negative on [the Title VII liability question]," and decided that the "safest course of action is to go back[] [and] add the conditioning [language] in," namely to have the jury answer the Title VII damages question only if it had answered "yes" to the Title VII liability question. In fact, the district court noted that it would be putting the conditioning language in every jury question in the future to avoid this confusion.

After the district court revised the first verdict form to include an instruction to proceed to the question of Title VII damages only upon an affirmative answer to the question of Title VII liability, the jury returned to deliberate—at the district court's behest and over Omni's objection. The

jury reached a verdict that Omni had violated Title VII, again awarding $100,000 in compensatory damages and $25,000,000 in punitive damages for Omni's violation of Title VII.[3] *See* Appendix B. With respect to Lindsley's EPA claim, the jury found that Omni proved its affirmative defense, and therefore, the claim failed. *See id.* Omni appealed on several grounds, listed below.

## II.

This court upholds a jury verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did" or "the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Johnson v. Thibodaux City*, 887 F.3d 726, 731 (5th Cir. 2018) (internal quotations omitted) (first quoting *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014); and then quoting *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 486–87 (5th Cir. 2004)).

## III.

The following issues are before us on appeal: (A) whether the jury's answers in its *first* verdict form required the district court to enter judgment for Omni; (B) whether the jury's answers in its *second* verdict form required judgment for Omni; (C) whether the district court erred in denying Omni's motion for judgment as a matter of law; (D) whether the district court erred in denying Omni a new trial; (E) whether punitive damages were proper; and (F) whether the district court's injunctive relief was proper. Because we hold that the district court did not err in handling the first verdict form, but did err in handling the second verdict form, we vacate the district court's

---

[3] The district court later reduced the punitive-damages amount by 98%—from $25 million to $300,000—in accordance with a statutory damages cap. *See* 42 U.S.C. § 1981a(b)(3).

judgment and remand for a new trial on that basis and need not reach the remaining issues.

## A.

Omni argues that the jury's answers in its first verdict form required the district court to enter judgment for Omni. We disagree.

### 1.

The first verdict form contained four "Questions about Title VII." *See* Appendix A. On the first question—the liability question—the jury answered that Lindsley failed to prove that she would not have been compensated less than her male predecessors but for her sex. Despite finding no liability, the jury proceeded to answer the remaining questions—the Title VII damages questions—and awarded Lindsley $100,000 in compensatory damages and $25 million in punitive damages. The verdict form did not include a go-no-further instruction or otherwise condition Title VII damages on Title VII liability.[4]

### 2.

Rule 49 articulates the standards courts must follow in evaluating jury's verdicts. *See generally* FED. R. CIV. P. 49. When a jury returns an internally inconsistent verdict, the judge has a duty to harmonize the inconsistent responses. *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 674 (5th Cir. 2002); *see also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that

---

[4] The first verdict form also included a separate but related issue that carried over to the second verdict form discussed in Part III.B, namely, the inclusion of an affirmative defense question in the context of the EPA questions but not in the Title VII questions.

way."). But how precisely the judge may harmonize discrepant responses turns on which section of Rule 49 applies, which itself turns on the type of verdict form at issue.

If the verdict form here was a "special verdict"—i.e., one where the jury merely resolves issues of fact—Rule 49(a) would apply. *Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 517 (5th Cir. 2020). Rule 49(a) is silent, although caselaw instructs, on what actions a district judge may take to resolve inconsistencies in a special verdict. *Id.* at 514. If, however, the verdict form was a "general verdict"—i.e., one where the jury goes beyond resolving fact issues and applies law to fact to indicate who won—Rule 49(b) would apply. *Id.* at 514–15, 517. Rule 49(b), unlike (a), lists the actions a district court may take to resolve inconsistencies in a verdict form and explains in what contexts the court may do so.

Rule 49(b)(2) provides that, "[w]hen the general verdict and the answers are consistent [with one another], the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers." Fed. R. Civ. P. 49(b)(2).

Rule 49(b)(3) provides that, "[w]hen the answers [to written interrogatories] are consistent with each other but one or more is inconsistent with the general verdict," the court may (A) enter judgment according to the answers, "notwithstanding the general verdict"; "(B) direct the jury to further consider its answers and verdict; or (C) order a new trial." Fed. R. Civ. P. 49(b)(3).

And finally, Rule 49(b)(4) provides that, "[w]hen the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial." Fed. R. Civ. P. 49(b)(4).

In *Waypoint*, we explained that a binary statement of who won—though a hallmark of general verdicts—need not always be present for a verdict to be general. *Id.* at 517. Rather, the crucial element of a general verdict is that the verdict requires the jury to apply law to fact. *Id.* Therefore, while general verdicts often contain a binary answer—judgment for plaintiff or judgment for defendant, *see Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 405 (5th Cir. 1979); *Dement v. Olin-Mathieson Chem. Corp.*, 282 F.2d 76, 78 (5th Cir. 1960)—they need not always. Moreover, a general verdict may contain "[a]nswers to [w]ritten [q]uestions." Fed. R. Civ. P. 49(b). We also explained in *Waypoint*—embracing the holding of a sister circuit—that where detailed jury instructions apprise the jury of the law, that suggests that the verdict is general, not special. 976 F.3d at 516. After all, "[i]f the written questions submitted to the jury were truly special verdicts, no instruction on the law, and certainly not [a] detailed [one,]" would be necessary. *Id.* (quoting *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1521 (6th Cir. 1990)).

Here, the verdict form is a general verdict with answers to written questions. True, the verdict form does not explicitly ask who won. But several questions in the verdict form require the jury to apply law to fact. The punitive-damages question, for instance, cannot be answered without reference to the jury instructions, which set forth a detailed roadmap of the law concerning when punitive damages are appropriate. More broadly, the jury instructions as a whole provide a thorough explanation of the law and the jury's relationship to it. These are hallmarks of a general verdict with answers to specific questions.

For that reason, Rule 49(b) applies. The question then becomes—which section of Rule 49(b) applies?

11

No. 23-11167

**3.**

Although the first verdict form itself did not contain a go-no-further instruction or otherwise condition Title VII damages on Title VII liability, the jury *instructions* explicitly conditioned answering the Title VII damages question on the jury's finding of Title VII liability. And verdict forms are considered part of the jury instructions such that appellate courts consider the verdict form "in light of" the instructions. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022). The first verdict form did contain language conditioning EPA damages on EPA liability.

The jury's answers to special interrogatories were inconsistent with each other: Omni did not violate Title VII yet owed $25 million for a Title VII violation.[5] And the damages answer conflicted with the general verdict

---

[5] This inconsistency distinguishes this case from our decisions in *Nimnicht v. Dick Evans, Inc.*, 477 F.2d 133 (5th Cir. 1973) (per curiam) and *Moore v. Maritime Overseas Corp.*, 736 F.2d 146, 147 (5th Cir. 1984) (per curiam). In *Nimnicht*, the jury answered "no" to the verdict form's liability questions—whether the defendant was negligent or the vessel in question was unseaworthy—but awarded $13,500 in damages. 477 F.2d at 134. We explained that, in light of the verdict form, "the trial court had three alternatives: (1) to enter judgment in accordance with the special answers, notwithstanding the general verdict, (2) to return the jury for further deliberation, or (3) to order a new trial." *Id.* That is the text of (what is now) subsection (b)(3) of Rule 49. *Compare Nimnicht*, 477 F.2d at 134–35, *with* FED. R. CIV. P. 49. Rule 49(b)(3) applies "[w]hen the answers are consistent with each other but one or more is inconsistent with the general verdict." FED. R. CIV. P. 49(b)(3). As this court later explained in *Moore*, when the damages question "[is] not conditioned in any way upon a finding [of liability]," the answer to the damages question only "establish[es] the amount of damages if the jury had found that defendant was responsible" under the applicable law. 736 F.2d at 147. As a result, the court concluded, "[t]he jury responses with respect to defendant's responsibility are unequivocal, and there is no conflict." *Id.* In *Nimnicht*, as in *Moore*, the jury did not receive a charge—either in the jury instructions or the verdict form itself—to only proceed to the damages issue if they answered affirmatively as to liability. So, the jury's answers to the liability and damages questions were not inconsistent with each other (but the damages answer was inconsistent with the general verdict), and therefore Rule 49(b)(3) applied. For

that followed from the jury's no-liability finding. *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1259–60, 1260 n.1 (5th Cir. 1988) (finding the answers inconsistent when the jury answered "yes" to the question of whether the tire was defective and "no" to the question of whether the defect caused the plaintiff's injury but proceeded to answer that defendant was 10% at fault for the plaintiff's injury and assessed damages at $629,000 despite a go-no-further instruction). Accordingly, Rule 49(b)(4) applies. Under that rule, the district court had no power to enter judgment upon receipt of the first verdict form, but it did have discretion to either order more deliberation or order a new trial. Fed. R. Civ. P. 49(b)(4). It chose the former option, and that decision was not an abuse of discretion. *Richard*, 853 F.2d at 1261.

As we have held, "[t]he district judge . . . is in the best position to determine whether the [jury's] answers reflect confusion or uncertainty," *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 154 (5th Cir. 2017) (ellipsis in original) (internal quotations omitted) (quoting *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 342–43 (5th Cir.), *opinion amended on denial of reh'g*, 274 F.3d 881 (5th Cir. 2001)), and is thus afforded "considerable latitude" in interpreting a jury's responses to special interrogatories and "giving effect to [the jury's] intentions in light of the surrounding circumstances," *Carr*, 312 F.3d at 670.

The district court found that the jury had been "confused by conditioning on [the EPA claims] and . . . the double negative on [the Title

---

that reason, we concluded in both cases that the district courts properly entered judgment in accordance with the liability determination, notwithstanding the damages finding. *Nimnicht*, 477 F.2d at 135; *Moore*, 736 F.2d at 147.

Here, because the court instructed the jury that they should only award Title VII damages if they answered the Title VII liability question in the affirmative, the jury's negative answer as to liability was inconsistent with its answer as to the damages question.

VII liability question]," and decided that the "safest course of action [wa]s to go back[] [and] add the conditioning [language] in." The jury's "answer to a question that was supposed to terminate further inquiry" (no Title VII liability) was therefore not clear because of the double negative in the Title VII liability question. *See White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987).[6] Having concluded that the jury was confused, the district court ordered renewed deliberation, and soon after, the jury reached a unanimous verdict that Omni had violated Title VII, again awarding $100,000 in compensatory damages and $25 million in punitive damages for Omni's violation of Title VII. The district court thus followed the plain text of Rule 49 and exercised sound discretion in resolving the apparent inconsistency resulting from jury confusion. *Richard*, 853 F.2d at 1260–61 (citing to Rule 49, this court "decline[d] to disturb the district court's exercise of discretion in determining that the [first] series of answers submitted by this jury was not clear and required resubmission").

---

[6] For that reason, the conclusion this panel reaches is not at odds with this court's precedent in *Grinfas*. In *Grinfas*, this court articulated that "if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is *clear* and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions." 809 F.2d at 1161 (emphasis added).

Here, the district court specifically cautioned that the jury had been "confused by . . . the double negative on [the Title VII liability question]" — in addition to being confused because the EPA questions included the conditioning language, which could suggest to the jury that the exclusion of conditional language in the Title VII questions was intentional. The jury's "answer to a question that was supposed to terminate further inquiry" (no Title VII liability) was therefore not clear because of the double negative. *See id.* Accordingly, *Grinfas* does not apply here.

## B.

Omni argues that the jury's answers in its second verdict form required the district court to enter judgment for Omni. We conclude that the inconsistencies in the jury's second verdict form necessitate a new trial.

### 1.

Both Title VII and the EPA prohibit pay discrimination on the basis of sex. *Lindsley I*, 984 F.3d at 466. To prove a Title VII claim, a plaintiff must show that she was paid less than members of the opposite sex for "work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). After the plaintiff makes that showing, the burden then shifts to the defendant to prove that the wage differential is justified under one of four affirmative defenses: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex." *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001) (internal quotations omitted) (citing 29 U.S.C. § 206(d)(1)) (affirmative defenses in the EPA); 42 U.S.C. § 2000e-2(h) (incorporating the EPA's affirmative defenses into Title VII); *accord Washington County v. Gunther*, 452 U.S. 161, 167–80 (1981).

### 2.

Although the second verdict form included a go-no-further instruction that informed the jury to not answer the Title VII damages questions if it answered no to the Title VII liability question, an additional issue remained—the inclusion of an affirmative defense question in the context of the EPA questions but not in the Title VII questions. *See* Appendix B.

15

No. 23-11167

The EPA questions in the second verdict form included a question about Omni's affirmative defense, and the jury found that Omni had proved that any pay disparity Lindsley incurred resulted from "a factor other than sex." That question informed the jury to skip the remaining "Equal Pay Act Questions"—i.e., Lindsley's EPA claim failed. By law, then, Lindsley's Title VII claim should have failed too, meaning she would not be entitled to Title VII damages. *See Siler-Khodr*, 261 F.3d at 546. But the jury awarded her those damages, and after reducing the punitive-damages amount in accordance with a statutory damages cap, the district court entered judgment for Lindsley.

The Title VII questions did not include language about the "factor other than sex" affirmative defense. However, verdict forms are considered part of the jury instruction, so the appellate court considers the verdict form "in light of" the entire jury instruction. *Wantou*, 23 F.4th at 432. Although the jury charge did not *explicitly* provide that the "factor other than sex" affirmative defense—if proven—would bar Lindsley's Title VII claim, the Title VII liability section explained that it is not unlawful for an employer to "pay one employee less than another for the same or similar work for other reasons, good or bad, fair or unfair," i.e., for reasons other than the employee's sex. That instruction describes, albeit not verbatim, the "factor other than sex" affirmative defense.

So, at a minimum, the jury was confused as to whether their finding on the "factor other than sex" affirmative defense with respect to the EPA affected their determination of the Title VII claim.[7] *Cf. Grinfas*, 809 F.2d at 1161.

_____

[7] Further adding to juror confusion, Omni's counsel repeatedly underscored the differences between the EPA and Title VII (even if those differences pertained to threshold

No. 23-11167

Like with the first verdict form, the jury's answers to the special interrogatories on the second verdict form were inconsistent with each other: The jury found that any pay disparity Lindsley incurred resulted from a factor other than sex (an affirmative defense to liability under both the EPA and Title VII), yet Omni owed $25 million for a Title VII violation. And the damages answer conflicted with the general verdict that followed from the jury's affirmative-defense finding. Thus, Rule 49(b)(4) applies. Under Rule 49(b)(4), the district court had no power to enter judgment upon receipt of the second verdict form as it did. FED. R. CIV. P. 49(b)(4). Rather, the proper course of action would have been to either order more deliberation or order a new trial. *Id.* The district court therefore erred in entering judgment upon the second verdict form.

## C.

Because the second issue raised on appeal is case-dispositive, we resolve the case on that basis and need not go further.

## IV.

For the foregoing reasons, we VACATE the judgment and REMAND for a new trial consistent with this opinion.

---

liability and not to the issue of whether this affirmative defense completely barred either claim).

No. 23-11167

Appendix A

No. 23-11167

# JURY QUESTIONS

## I. Questions about Title VII

### Question 1

Has Plaintiff Lindsley proved that she would not have been compensated less than one or more of her male predecessors in the position of Director of Food & Beverage at the Omni Hotel in Corpus Christi in the absence of—in other words, but for—her sex?

Answer "Yes" or "No"

Answer: __NO__

No. 23-11167

Question 2

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Lindsley for the damages, if any, you have found Defendant Omni Hotels caused Plaintiff Lindsley?

Answer in dollars and cents for the following items and none other:

1. Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

$  100,000

2. Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

$

3. Wages and benefits from September 23, 2013 through December 30, 2014.

$

4. Wages and benefits from December 31, 2014 through June 8, 2016.

$

No. 23-11167

Question 3

Do you find that Plaintiff Lindsley should be awarded punitive damages?

Answer "Yes" or "No"

Answer: _Yes_

No. 23-11167

*If you answered "Yes" to Question 3, then answer Question 4.*

<u>Question 4</u>

What sum of money should be assessed against Defendant Omni Hotels as punitive damages?

Answer in dollars and cents:

$ ___25,000,000___

No. 23-11167

## II. Equal Pay Act Questions

<u>Question 5</u>

Has Plaintiff Lindsley proved that Defendant Omni Hotels paid her less than members of the opposite sex for performing work in a position requiring equal skill, effort, and responsibility under similar working conditions?

Answer "Yes" or "No"

Answer: Yes

23

No. 23-11167

Question 6

Has Defendant Omni Hotels proved that the difference in pay was the result of a factor other than sex?

Answer "Yes" or "No"

Answer: ___yes___

No. 23-11167

*If you answered "Yes" to Question 5 and "No" to Question 6, then answer Question 7.*

<u>Question 7</u>

Was Defendant Omni Hotels's violation of the Equal Pay Act willful?

Answer "Yes" or "No"

Answer: N/A

No. 23-11167

*If you answered "Yes" to Question 7, then answer Question 8. If you answered "No" to Question 7, then answer Question 9.*

<u>Question 8</u>

What sum of money, if paid now in cash, is the difference in pay between Plaintiff Lindsley and her male comparators (Jason Polland, Robert Walker, and Daniel Cornelius) from October 25, 2014 to June 8, 2016?

Answer in dollars and cents:

$_____N/A_____

No. 23-11167

## Question 9

What sum of money, if paid now in cash, is the difference in pay between Plaintiff Lindsley and her male comparators (Jason Polland, Robert Walker, and Daniel Cornelius) from October 25, 2015 to June 8, 2016?

Answer in dollars and cents:

$_____N/A_____

No. 23-11167

## III. Integrated Enterprise Question

Question 10

Has Plaintiff Lindsley proved that Omni Hotels Management Corporation and TRT Holdings, Inc. represent a single, integrated enterprise?

Answer "Yes" or "No"

Answer: __Yes__

_____        __3/9/23__
Foreperson                      Date

28

No. 23-11167

Appendix B

No. 23-11167

# JURY QUESTIONS

## I. Questions about Title VII

### Question 1

Has Plaintiff Lindsley proved that she would not have been compensated less than one or more of her male predecessors in the position of Director of Food & Beverage at the Omni Hotel in Corpus Christi in the absence of—in other words, but for—her sex?

Answer "Yes" or "No"

Answer: __Yes__

*On question 1:*
*(1) If you answer yes, then answer question 2.*
*(2) If you answer no, then answer question 5.*

30

No. 23-11167

Question 2

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Lindsley for the damages, if any, you have found Defendant Omni Hotels caused Plaintiff Lindsley?

Answer in dollars and cents for the following items and none other:

1. Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.



$    100,000

2. Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

$    0

3. Wages and benefits from September 23, 2013 through December 30, 2014.

$    0

4. Wages and benefits from December 31, 2014 through June 8, 2016.

$    0

*After answering question 2 (if the instruction to Question 1 requires it), then answer question 3.*

No. 23-11167

Question 3

Do you find that Plaintiff Lindsley should be awarded punitive damages?

Answer "Yes" or "No"

Answer: _Yes_

*After answering question 3 (if the above instructions require it), then:*
*(1) If you answer yes, then answer question 4.*
*(2) If you answer no, then answer question 5.*

No. 23-11167

Question 4

What sum of money should be assessed against Defendant Omni Hotels as punitive damages?

Answer in dollars and cents:

$ 25,000,000

*On question 4: after answering question 4 (if the above instructions require it), then answer question 5.*

No. 23-11167

## II. Equal Pay Act Questions

*Answer question 5 no matter what your answers were to questions 1-4.*

<u>Question 5</u>

Has Plaintiff Lindsley proved that Defendant Omni Hotels paid her less than members of the opposite sex for performing work in a position requiring equal skill, effort, and responsibility under similar working conditions?

Answer "Yes" or "No"

Answer: ___Yes___

*On question 5:*
*(1) if you answer yes, then answer question 6.*
*(2) If you answer no, then answer question 10.*

34

No. 23-11167

Question 6

Has Defendant Omni Hotels proved that the difference in pay was the result of a factor other than sex?

Answer "Yes" or "No"

Answer: ___Yes___

*On question 6:*
*(1) If you answer yes, then answer question 10.*
*(2) If you answer no, then answer question 7.*

35

No. 23-11167

<u>Question 7</u>

Was Defendant Omni Hotels's violation of the Equal Pay Act willful?

Answer "Yes" or "No"

Answer: ___N/A___

*On question 7:*
*(1) If you answer yes, then answer question 8.*
*(2) If you answer no, then answer 9.*

No. 23-11167

Question 8

What sum of money, if paid now in cash, is the difference in pay between Plaintiff Lindsley and her male comparators (Jason Polland, Robert Walker, and Daniel Cornelius) from October 25, 2014 to June 8, 2016?

Answer in dollars and cents:

$ _____ N/A _____

*After answering question 8 (if the above instructions require it), then answer question 10.*

No. 23-11167

Question 9

What sum of money, if paid now in cash, is the difference in pay between Plaintiff Lindsley and her male comparators (Jason Polland, Robert Walker, and Daniel Cornelius) from October 25, 2015 to June 8, 2016?

Answer in dollars and cents:

$ N/A

*After answering question 9 (if the above instructions require it), then answer question 10.*

No. 23-11167

## III. Integrated Enterprise Question

<u>Question 10</u>

Has Plaintiff Lindsley proved that Omni Hotels Management Corporation and TRT Holdings, Inc. represent a single, integrated enterprise?

Answer "Yes" or "No"

Answer: ___Yes___

___[signature]___
Foreperson

___3/9/2023___
Date

39